

# IN THE
# TENTH COURT OF APPEALS

### No. 10-13-00166-CR

**ALBERT RAMON GARCIA,**

                                        **Appellant**

 **v.**

**THE STATE OF TEXAS,**

                                        **Appellee**

### From the County Court at Law No. 1
### Brazos County, Texas
### Trial Court No. 10-05143-CRM-CCL1

## MEMORANDUM OPINION

After the trial court denied his motion to suppress the results of his blood-alcohol test, Appellant Albert Ramon Garcia pled guilty and was sentenced to 180 days in jail (probated for one year), assessed a $750 fine and court costs, and was ordered to perform fifty hours of community service. In his sole issue, Garcia asserts that the trial court erred in denying his motion to suppress because Garcia did not voluntarily consent to the blood draw. We will affirm.

We review a trial court's ruling on a motion to suppress evidence under a bifurcated standard of review. *Amador v. State*, 221 S.W.3d 666, 673 (Tex. Crim. App. 2007); *Guzman v. State*, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997). In reviewing the trial court's decision, we do not engage in our own factual review. *Romero v. State*, 800 S.W.2d 539, 543 (Tex. Crim. App. 1990); *Best v. State*, 118 S.W.3d 857, 861 (Tex. App.— Fort Worth 2003, no pet.). We give almost total deference to the trial court's rulings on (1) questions of historical fact, even if the trial court's determination of those facts was not based on an evaluation of credibility and demeanor; and on (2) application-of-law-to-fact questions that turn on an evaluation of credibility and demeanor. *Amador*, 221 S.W.3d at 673. But when application-of-law-to-fact questions do not turn on the credibility and demeanor of the witnesses, we review the trial court's rulings on those questions de novo. *Id.*

When reviewing the trial court's ruling on a motion to suppress, we must view the evidence in the light most favorable to the trial court's ruling. *State v. Kelly*, 204 S.W.3d 808, 818 (Tex. Crim. App. 2006). The trial judge is the exclusive fact-finder and the judge of the credibility of the witnesses and the weight to be given their testimony at the suppression hearing. *State v. Ross*, 32 S.W.3d 853, 855 (Tex. Crim. App. 2000). When the trial court does not make express findings of fact, an appellate court must "presume that the trial court implicitly resolved all issues of historical fact and witness credibility in the light most favorable to its ultimate ruling." *State v. Elias*, 339 S.W.3d 667, 674 (Tex. Crim. App. 2011). An appellate court will sustain the trial court's

decision if it concludes that the decision is correct on any theory of law applicable to the case. *Ross,* 32 S.W.3d at 855-56.

At the suppression hearing, DPS Trooper Justin Stohler testified that on July 11, 2010, at 4:08 a.m., he was dispatched to a one-vehicle accident in Brazos County. He arrived at the accident scene at 4:47 a.m.; the driver (Garcia) had already been taken to the hospital, and the vehicle was in a ditch. At the scene were a deputy and first responders, and Stohler was told that there had been several passengers who had fled the scene before anyone arrived. No open containers were found at the scene.

After concluding his investigation at the accident scene, Stohler went to the hospital, arriving at 5:45 a.m. Another trooper told Stohler that he had indicated alcohol use by Garcia. Stohler located Garcia in the ER and detected alcohol odor on his breath. Garcia first admitted to having had a "couple" of beers, and then changed his story to "three to four" beers. Garcia did not indicate that anyone else had been in the vehicle. Stohler said that Garcia kept changing his stories as they were talking and they "weren't making sense," though he also said that Garcia was "about his wits" and was able to converse with him. Stohler did not detect a slur in Garcia's speech, nor did he have bloodshot or glassy eyes. Garcia had been injured, including a "pretty good gash" over one eye.

Because of the injury over the eye, Stohler did not do an HGN eye test on Garcia. And because Garcia was strapped down to either a backboard or bed, Stohler did not do field-sobriety tests. Stohler said that he did not place Garcia under arrest because of his injuries and because he was going to be in the hospital for "some time." But Stohler

did testify that he had probable cause to arrest Garcia for DWI because of the totality of the circumstances, including the one-vehicle crash, his investigation of the scene, and Garcia's admission to consuming alcohol. And in his probable-cause report, Stohler wrote that Garcia had lost some of his mental and physical faculties due to alcohol in his system.

Because Stohler thought that he had probable cause to arrest Garcia for DWI, he read him the DIC-24 statutory warning and then asked for a blood specimen, which Garcia consented to. The DIC-24 form begins with "You are under arrest," but Stohler admitted that when he read the warning, including the part involving license suspension, he had not arrested Garcia. Stohler said that Garcia seemed to understand the DIC-24 warning.

Garcia testified that he agreed to give a blood specimen because, when Stohler told him the part about his license being suspended for 180 days, he was worried about losing his job as a bread truck driver if his license got suspended. He also said that if Stohler had asked for a blood specimen without telling him about the license suspension, he would not have agreed to provide a specimen.

Garcia's argument is that—because he was not under arrest for DWI and there was not probable cause for him to be arrested, Stohler's reading of the DIC-24 for a person under arrest, with its notice that Garcia's license would be suspended for 180 days if he refused to provide a specimen—his consent was involuntary because of Stohler's misstatement of the law under the totality of the circumstances. *See Fienen v. State*, 390 S.W.3d 328, 335 (Tex. Crim. App. 2012).

Any person who is arrested for DWI is deemed to have given consent to submit to providing a specimen for a breath or blood test for the purpose of determining alcohol concentration or the presence of a controlled substance, drug, dangerous drug, or other substance. TEX. TRANSP. CODE § 724.011(a). However, a person retains an absolute right (subject to certain exceptions not relevant here) to refuse a test. *Id.* § 724.013. That refusal must be strictly honored. *McCambridge v. State,* 712 S.W.2d 499, 504 n.16 (Tex. Crim. App. 1986); *Turpin v. State,* 606 S.W.2d 907, 913-14 (Tex. Crim. App. 1980). We have explained this apparent inconsistency: "'[C]onsent being implied by law, a driver may not legally refuse. A driver, however, can physically refuse to submit, and the implied consent law, recognizing that practical reality, forbids the use of physical force to compel submission.'" *Forte v. State,* 759 S.W.2d 128, 138 (Tex. Crim. App. 1988) (quoting *State v. Spencer,* 305 Or. 59, 750 P.2d 147, 153 (1988)), *overruled on other grounds by McCambridge v. State,* 778 S.W.2d 70, 76 (Tex. Crim. App. 1989).

A driver's consent to a blood or breath test must be free and voluntary, and it must not be the result of physical or psychological pressures brought to bear by law enforcement. *Meekins v. State,* 340 S.W.3d 454, 458-59 (Tex. Crim. App. 2011); *see Hall,* 649 S.W.2d at 628. The ultimate question is whether the person's "will has been overborne and his capacity for self-determination critically impaired" such that his consent to search must have been involuntary. *Schneckloth v. Bustamonte,* 412 U.S. 218, 225-26, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973); *Meekins,* 340 S.W.3d at 459. We "review the totality of the circumstances of a particular police-citizen interaction from the point of view of the objectively reasonable person." *Meekins,* 340 S.W.3d at 459. The validity of an alleged consent is a question of fact, and the State must prove voluntary consent by clear and convincing evidence. *State v. Weaver,* 349 S.W.3d 521, 526 (Tex. Crim. App. 2011).

*Id.* at 332-33.

Garcia relies on two factually similar cases—*State v. Williams*, 814 S.W.2d 256 (Tex. App.—Austin 1991), *aff'd*, 832 S.W.2d 52 (Tex. Crim. App. 1992), and *State v. Mosely*, 348 S.W.3d 435 (Tex. App.—Austin 2011, pet. ref'd)—but the State correctly

notes, as has the Austin court for *Williams*,[1] that each of those cases is distinguishable because the trial court granted the defendant's motion to suppress.[2] Also, the State cites factually similar cases where the trial court denied the defendants' motions to suppress and the rulings were affirmed on appeal: *Washburn v. State,* 235 S.W.3d 346 (Tex. App.—Texarkana 2007, no pet.); *Nottingham,* 908 S.W.2d 585; *see also Belk,* 2010 WL 3190230.

Because Stohler's use of the DIC-24 form with its statutory warnings was appropriate only if Garcia was under arrest, *Nottingham,* 908 S.W.2d at 588, we must first determine whether Garcia was under arrest and Stohler had probable cause to arrest him. *See Washburn,* 235 S.W.3d at 350; *Nottingham,* 908 S.W.2d at 588.

> An individual is arrested when he or she has been actually placed under restraint or taken into custody. TEX. CODE CRIM. PROC. ANN. art. 15.22 (Vernon 2005). "A person is in 'custody' only if, under the circumstances, a reasonable person would believe that his freedom of movement was restrained to the degree associated with a formal arrest." *Dowthitt v. State,* 931 S.W.2d 244, 254 (Tex. Crim. App. 1996) (citing *Stansbury v. California,* 511 U.S. 318, 114 S.Ct. 1526, 128 L.Ed.2d 293 (1994)). At least four general situations may constitute custody: (1) the suspect is physically deprived of his or her freedom of action in any significant way, (2) a law enforcement officer tells the suspect that he or she cannot leave,

---

[1] *Belk v. State,* No. 03-09-00402-CR, 2010 WL 3190230, at *4 (Tex. App.—Austin 2010, no pet.) (mem. op., not designated for publication) ("The procedural posture of *Williams* was different than the case before us. The trial court in *Williams* granted the defendant's motion to suppress, and this Court concluded that it was not an abuse of discretion to do so. In this case, Belk is asking us to conclude that the trial court's denial of the motion to suppress was an abuse of discretion. On this record, as we have already explained, we cannot do so. In *Williams,* the trial court did not give much weight to the opinions and observations of the arresting officer. In contrast, the trial court in this case, by its ruling, implicitly did.") (footnote and citation omitted).

[2] In *Nottingham v. State*, the Austin court subsequently highlighted the deference due the trial court's discretion in ruling on a suppression motion and noted, "our holding in *Williams* that the trial court did not abuse its discretion in finding an absence of probable cause does not necessarily mean that another trial court, given similar facts, could not reasonably reach the opposite conclusion." *Nottingham v. State,* 908 S.W.2d 585, 589 (Tex. App.—Austin 1995, no pet.).

(3) law enforcement officers create a situation that would lead a reasonable person to believe that his or her freedom of movement has been significantly restricted, and (4) there is probable cause to arrest and law enforcement officers do not tell the suspect that he or she is free to leave. *Dowthitt*, 931 S.W.2d at 255. The Texas Court of Criminal Appeals has explained the fourth situation as follows:

> the officers' knowledge of probable cause be manifested to the suspect. Such manifestation could occur if information substantiating probable cause is related by the officers to the suspect or by the suspect to the officers. Moreover, given our emphasis on probable cause as a "factor" in other cases, situation four does not automatically establish custody; rather, custody is established if the manifestation of probable cause, combined with other circumstances, would lead a reasonable person to believe that he is under restraint to the degree associated with an arrest.

> *Id.*

*Washburn*, 235 S.W.3d at 350.

A law-enforcement officer's subjective opinion or intent that an arrest has or has not occurred is a factor to consider, *Nottingham*, 908 S.W.2d at 588, but it "is irrelevant unless that intent is somehow communicated or otherwise manifested to the suspect." *Washburn*, 235 S.W.3d at 350 (citing *Dowthitt*, 931 S.W.2d at 254). In factually similar scenarios (an injured DWI suspect at a hospital, courts, including *Williams*, have held that the officer's reading the DIC-24 form's "you are under arrest" statement resulted in the suspect being under arrest at the point the statement was made to the suspect. *See id.* at 352-53; *Nottingham*, 908 S.W.2d at 587-88; *Bell v. State*, 881 S.W.2d 794, 799-800 (Tex. App.—Houston [14th Dist.] 1994, pet. ref'd); *Williams*, 814 S.W.2d at 259. We similarly conclude that, because there is no evidence that Stohler told Garcia that was not under arrest or was free to leave, and with Garcia being strapped down in the hospital, a

reasonable person in Garcia's position would not have believed that he was free to leave after being told that he was under arrest and would believe that his freedom of movement was restrained to the degree associated with a formal arrest. *Washburn,* 235 S.W.3d at 352-53; *Nottingham,* 908 S.W.2d at 588.

> "Probable cause" for a warrantless arrest exists if, at the moment the arrest is made, the facts and circumstances within the arresting officer's knowledge and of which he has reasonably trustworthy information are sufficient to warrant a prudent man in believing that the person arrested had committed or was committing an offense. *Beck v. Ohio,* 379 U.S. 89, 91, 85 S.Ct. 223, 13 L.Ed.2d 142 (1964). The test for probable cause is an objective one, unrelated to the subjective beliefs of the arresting officer, *id.* at 97, 85 S.Ct. 223, and it requires a consideration of the totality of the circumstances facing the arresting officer, *Maryland v. Pringle,* 540 U.S. 366, 371, 124 S.Ct. 795, 157 L.Ed.2d 769 (2003). A finding of probable cause requires "more than bare suspicion" but "less than … would justify … conviction." *Brinegar v. United States,* 338 U.S. 160, 175, 69 S.Ct. 1302, 93 L.Ed. 1879 (1949).

*Amador v. State,* 275 S.W.3d 872, 878 (Tex. Crim. App. 2009).

Under the totality of the circumstances, the trial court could have concluded that Stohler had probable cause to arrest Garcia for DWI. Garcia was the driver in a single-vehicle accident around 4:00 a.m. The passengers fled the scene before law enforcement arrived, and both Stohler and another trooper smelled alcohol on Garcia's breath almost two hours later at the hospital. Garcia admitted to having drunk three to four beers and kept changing his stories such that they "weren't making sense" to Stohler and could be evidence of Garcia's loss of use of his mental faculties from the consumption of alcohol. *See Washburn,* 235 S.W.3d at 351; *Knisely v. State,* 81 S.W.3d 478, 483-84 (Tex. App.—Dallas 2002, pet. ref'd); *Reynolds v. State,* 902 S.W.2d 558, 560 (Tex. App.—Houston [1st Dist.] 1995, pet. ref'd); *see also Belk,* 2010 WL 3190230, at *2-3.

Because Garcia's issue of involuntary consent is entirely premised on there being no arrest or probable cause, and because we have held that the trial court could have found that there was an arrest and probable cause, we overrule Garcia's issue and affirm the trial court's suppression ruling.


REX D. DAVIS
Justice

Before Chief Justice Gray,
        Justice Davis, and
        Justice Scoggins
Affirmed
Opinion delivered and filed July 24, 2014
Do not publish
[CR25]