# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-09-00041-CR

**Lawrence Charles Anderson, Appellant**

**v.**

**The State of Texas, Appellee**

### FROM THE DISTRICT COURT OF BELL COUNTY, 264TH JUDICIAL DISTRICT
### NO. 63,440, HONORABLE MARTHA J. TRUDO, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

Appellant Lawrence Charles Anderson pleaded guilty to the offense of driving while intoxicated. *See* Tex. Penal Code Ann. § 49.04(a) (West 2003). The trial court assessed punishment, enhanced by a previous felony conviction, at 18 years' imprisonment. On appeal Anderson complains that (1) the trial court erred by overruling his pretrial motion to suppress test results of blood drawn when Anderson was taken to a hospital after crashing his car into two other cars on a street in Killeen; and (2) the trial court erred by failing to conduct a competency inquiry. We will affirm the judgment of conviction.

## BACKGROUND

At about 7:00 p.m. on October 21, 2007, officers Robert Mack and James Craigg of the Killeen police department happened upon the scene of a traffic accident. Anderson was identified to them as the driver of a vehicle that had collided with two other vehicles as they waited

in a left turn lane. Officer Craigg administered a field sobriety test and determined Anderson was intoxicated. Anderson was arrested and taken into custody by Craigg. Anderson was taken to the Killeen city jail where he experienced chest pains and requested medical attention. Craigg accompanied Anderson in an ambulance to a hospital. At the hospital, Craigg directed Tracy Taylor, a registered nurse, to draw a blood sample from Anderson to test for the presence of alcohol.

After Anderson was indicted for the offense of driving while intoxicated, he filed a pretrial motion to suppress evidence of the blood test results. The trial court held a hearing on the motion, at which both officers Mack and Craigg testified about the arrest and the events surrounding the taking of the blood sample at the hospital. Anderson also testified at the hearing. The trial court denied the motion to suppress and Anderson pleaded guilty to driving while intoxicated. At the punishment phase, the trial court heard testimony from the drivers of each of the vehicles Anderson hit as well as from one of Anderson's co-workers. The court also reviewed a presentence investigation report. Punishment was assessed at 18 years' imprisonment. The trial court granted Anderson's request for permission to appeal and this appeal followed.

**DISCUSSION**

*Suppression Issue*

In his first issue, Anderson contends that the district court erred by denying his motion to suppress the blood test results. We review a ruling on a motion to suppress evidence for abuse of discretion. *Shepherd v. State*, 273 S.W.3d 681, 684 (Tex. Crim. App. 2008) (citing *State v. Dixon*, 206 S.W.3d 587, 590 (Tex. Crim. App. 2006)). We give almost total deference to the trial court's determination of historical facts and review the court's application of search and seizure law that

2

does not turn upon credibility and demeanor *de novo*. *Balentine v. State*, 71 S.W.3d 763, 768 (Tex. Crim. App. 2002); *Johnson v. State*, 68 S.W.3d 644, 652-53 (Tex. Crim. App. 2002). When the trial court fails to make explicit findings of fact, we review the facts in the light most favorable to the trial court's decision and imply fact findings that support the trial court's ruling so long as the evidence supports the findings.[1] *State v. Kelly*, 204 S.W.3d 808, 818-19 (Tex. Crim. App. 2006). We must affirm the trial court's ruling on a motion to suppress if it can be upheld on any valid theory of law applicable to the case—even if the trial court did not base its decision on that theory. *State v. Steelman*, 93 S.W.3d 102, 107 (Tex. Crim. App. 2002); *Romero v. State*, 800 S.W.2d 539, 543-44 (Tex. Crim. App. 1990).

Anderson contends on appeal that the blood sample, which he claims was drawn after he had fallen asleep, was taken without his consent and without a warrant. The taking of a blood specimen is considered a search and seizure within the meaning of the Fourth Amendment to the United States Constitution. *See Schmerber v. California*, 384 U.S. 757, 766-69 (1966); *Aliff v. State*, 627 S.W.2d 166, 169 (Tex. Crim. App. 1982). The Texas Constitution prohibits unreasonable searches and seizures. Tex. Const. art. I, § 9; *Reasor v. State*, 12 S.W.3d 813, 818 (Tex. Crim. App. 2000). In determining the reasonableness of a search or seizure, the actions of police are judged by balancing the individual's privacy interest against the State's interest in law enforcement. *Gutierrez v. State*, 221 S.W.3d 680, 685 (Tex. Crim. App. 2007). There is a "strong preference" for searches and seizures to be administered pursuant to a warrant. *Id.* (citing

---

[1] Because the trial court denied appellant's motion to suppress, we are required to view the evidence in the light most favorable to the State, not Anderson. *State v. Kelly*, 204 S.W.3d 808, 818 (Tex. Crim. App. 2006).

*United States v. Ventresca*, 380 U.S. 102, 106 (1965)). However, "if police have probable cause coupled with an exigent circumstance, or they have obtained voluntary consent, or they conduct a search incident to a lawful arrest, the Fourth Amendment will tolerate a warrantless search." *Id.* (citing *McGee v. State*, 105 S.W.3d 609, 615 (Tex. Crim. App. 2003)).

The issue before the trial court was whether Anderson consented to the blood draw, and whether that consent was valid. Consent is valid when it is voluntarily given. *Harrison v. State*, 205 S.W.3d 549, 552 (Tex. Crim. App. 2006). The validity of consent is a question of fact, and the State bears the burden to prove by clear and convincing evidence that consent was obtained voluntarily. *Gutierrez*, 221 S.W.3d at 686. This burden includes proving that consent was not the result of duress or coercion. *Id.* To determine whether this burden is met, the court examines the totality of the circumstances. *Harrison*, 205 S.W.3d at 552.

In a suppression hearing, the trial court is the sole trier of fact and judge of the credibility of the witnesses and the weight to be given their testimony. *Romero*, 800 S.W.2d at 543. The trial court may accept or reject any or all of any witness's testimony. *Alvarado v. State*, 853 S.W.2d 17, 23 (Tex. Crim. App. 1993). At the hearing on the motion to suppress, both officers involved in Anderson's arrest testified. Mack testified that, while he was at the hospital room with Anderson, Craigg, and a hospital nurse, Craigg asked Anderson for consent to draw his blood. Mack testified that he heard Anderson orally consent to the request. According to Mack, Anderson was coherent and able to answer questions. Mack testified that "Craigg read Anderson his statutory warnings," obtained Anderson's consent, and directed the nurse to take a blood sample. He stated that neither he nor Craigg either threatened Anderson or promised him anything to obtain his consent. Mack testified that he did not hear Anderson withdraw or revoke his consent. Craigg

4

testified that he spoke to Anderson at the hospital and obtained his oral consent to draw a blood sample. He stated that he did not threaten or promise Anderson anything to obtain his consent, and that Anderson did not revoke his oral consent to provide the sample. By the time the officers had provided the hospital nurse with the blood draw kit, Anderson had fallen asleep and was asleep when the sample was taken.

Anderson testified that the officers never asked him to consent to give a blood sample and that he never gave his consent. Anderson testified that he was "out the whole time from the jailhouse" and had no memory of talking to the officers at the hospital. According to Anderson, no one asked his permission to take a blood sample until the morning after his arrest.

The trial court was faced with conflicting testimony regarding whether or not Anderson consented to the blood draw before falling asleep. If the trial court's findings are supported by the record, we will not disturb those findings absent an abuse of discretion. *Cantu v. State*, 817 S.W.2d 74, 77 (Tex. Crim. App. 1991). Having reviewed the evidence, we conclude that it supports the trial court's implied finding that Anderson in fact consented to the blood draw. Although Anderson fell asleep and was asleep when the blood was actually drawn, he never withdrew his consent. The trial court did not abuse its discretion by denying the motion to suppress.

The record also supports the trial court's decision on a separate ground. The blood draw was authorized under section 724.011 of the transportation code. *See* Tex. Transp. Code Ann. § 724.011(a) (West 1999). That section provides that a person arrested for driving while intoxicated is deemed to have consented to the taking of a breath or blood sample to determine the alcohol concentration in the person's body. *Id.* Anderson concedes in his brief that he was under arrest when the blood sample was taken. Even though Anderson fell asleep after the arrest, the blood draw

5

was still authorized. *See id.* § 724.014 ("A person who is dead, unconscious, or otherwise incapable of refusal is considered not to have withdrawn the consent provided by Section 724.011.").

Anderson contends on appeal that transportation code sections 724.011 and 724.014 as applied to him violate both the United States and Texas Constitutions because they permitted a blood sample to be drawn in violation of his right to privacy, and because they authorize "an unreasonable use of the power to search and seize." Addressing a similar argument, the Supreme Court in *Schmerber v. California* held that when there is probable cause for an arrest, the same facts that established probable cause justify the police in requiring the person arrested to submit a blood sample to test his blood-alcohol content. 384 U.S. at 770-71. The Supreme Court reasoned that, in view of the consequences of delay in taking a blood test for alcohol, and the time needed to investigate the accident scene, there was no time to secure a warrant. The Supreme Court concluded that when there is a clear indication that evidence of intoxication would in fact be found, the search is an appropriate incident of the arrest. *Id.* The Supreme Court held that a search conducted by taking a blood sample is reasonable because it is an effective means of determining intoxication, imposes virtually no risk, trauma, or pain, and may be performed in a reasonable manner by a physician or health care provider in a hospital. *Id.* The same result obtains under the Texas Constitution. *See Aliff*, 627 S.W.2d at 170 (scope of Article I, Section 9 of Texas Constitution is coextensive with that of Fourth Amendment to United States Constitution); *Knisley v. State*, 81 S.W.3d 478, 483 (Tex. App.—Dallas 2002, pet. ref'd) (statutes dictating requirements necessary for lawful taking of blood construed to supplement, not reduce, constitutional constraints). Under the Texas Constitution, the warrantless taking of a blood sample is not an unreasonable search and seizure so long as probable cause to arrest exists, the method of extraction is reasonable, and there

6

are exigent circumstances—in this case the consequences of a delay in taking the blood sample. *See Aliff*, 627 S.W.2d at 170. We reject Anderson's constitutional challenge to these provisions of the transportation code. Anderson's first issue is overruled.

### Anderson's Competency

In his second issue, Anderson claims that during the plea and sentencing hearing, evidence was brought to the trial court's attention regarding his mental incompetence. He contends that the trial court erred by not conducting a "full and sufficient inquiry into whether or not [he] was competent to stand trial."[2] The code of criminal procedure prohibits a trial court from accepting a guilty plea "unless it appears that the defendant is mentally competent." Tex. Code Crim. Proc. Ann. art. 26.13(b) (West 2009). A defendant must also be mentally competent to be sentenced. *See Casey v. State*, 924 S.W.2d 946, 949 (Tex. Crim. App. 1996) (sentencing is part of trial and competency considerations apply). A defendant is presumed competent and shall be found competent to stand trial unless proven incompetent by a preponderance of the evidence. *See* Tex. Code Crim. Proc. Ann. art. 46B.003 (West 2006). A defendant is incompetent to stand trial if he does not have (1) sufficient present ability to consult with his attorney with a reasonable degree of rational understanding, or (2) rational as well as factual understanding of the proceedings against him. *Id.* art. 46B.003(a).

If, during trial, evidence is brought to the attention of the trial court from any source raising a bona fide doubt as to the defendant's competency, the court must, on its own motion,

---

[2] We view appellant's complaint as challenging the trial court's failure to, on its own motion, suggest that he may be incompetent to stand trial. *See* Tex. Code Crim. Proc. Ann. art. 46B.004(b) (West 2006).

suggest that the defendant may be incompetent to stand trial and determine by informal inquiry whether there is some evidence to support a finding of incompetence. *Id.* art. 46B.004(b), (c); *Montoya v. State*, 291 S.W.3d 420, 425 (Tex. Crim. App. 2009). A trial judge must conduct a competency inquiry only if sufficient evidence exists to create a bona fide doubt in the judge's mind as to whether the accused meets the test of legal competence. *Montoya*, 291 S.W.3d at 425. A bona fide doubt may exist if the defendant exhibits truly bizarre behavior or has a recent history of severe mental illness or at least moderate mental retardation. *Id.* We review a trial court's failure to conduct a competency inquiry under an abuse of discretion standard. *Moore v. State*, 999 S.W.2d 385, 393 (Tex. Crim. App. 1999). A trial court abuses its discretion if its decision is arbitrary or unreasonable. *Lewis v. State*, 911 S.W.2d 1, 7 (Tex. Crim. App. 1995).

Anderson claims that the following should have raised a bona fide doubt in the trial court's mind as to his competency: (1) Anderson's own denial when asked by the court whether he was mentally competent to proceed and whether he believed he was mentally sound; (2) a presentence investigation report indicating that a psychiatrist had diagnosed Anderson with attention deficit hyperactivity disorder and that Anderson had taken various medications; and (3) Anderson's behavior at the sentencing hearing which he contends was "bizarre and showed that he was confused and uncertain what was going on."

We first consider Anderson's claim that he denied his competency to proceed. The following colloquy took place during the plea hearing:

    **The Court:**   And are you mentally competent to proceed to court today?

    **Defendant:**  No.

8

| | |
|---|---|
| **The Court:** | Mentally competent? Not incompetent. Are you mentally sound, mentally sane? Are you insane? |
| **Defendant:** | No. No. |
| **The Court:** | Start—stop there. Let's start again. Do you believe you are mentally sound? |
| **Defendant:** | No. |
| **The Court:** | No. Okay. Do you believe that you are insane? |
| **Defendant:** | No. |
| **The Court:** | Do you believe that you are incompetent? That means that you don't have the use of your mental faculties, you're not able to discuss with your lawyer this case, you don't understand what you're charged with? Are you—are you not of sound mind? Okay. Do you have any mental difficulties or impairment? |
| **Defendant:** | No. No, ma'am. |
| **The Court:** | Do you understand what you are charged with? |
| **Defendant:** | Yes, ma'am. |
| **The Court:** | You understand and are able to communicate with your lawyer about any possible defenses you might have, about your rights to have a trial, to participate. You understand all of that? |
| **Defendant:** | Yes. |
| **The Court:** | Is there any reason to think that you are not mentally sound or of sound mind today? |
| **Defendant:** | No. |

Considered in context, Anderson's statement that he is not competent appears to result from his

confusion about the question. After further inquiry, Anderson stated that he had no mental

impairment, that he understood what he was charged with, and was able to communicate with his

9

lawyer. At the end of the questioning, he confirmed that there was no reason to think he was not mentally sound or of sound mind at the time of the plea hearing. After questioning Anderson, the court asked Anderson's attorney whether he agreed that Anderson was mentally sound and mentally competent. Anderson's attorney agreed that he was, after which the court found Anderson mentally competent. Even if Anderson had continued to insist that he was not competent, that assertion, unsupported by any facts or evidence, is not sufficient by itself to require a competency inquiry. *See McDaniel v. State*, 98 S.W.3d 704, 711 (Tex. Crim. App. 2003).

Anderson next argues that there was sufficient evidence of incompetency in the presentence investigation report to require the judge to hold a competency inquiry. The presentence investigation report was not made part of the record. However, even assuming the report included evidence that Anderson had been treated by a psychiatrist, diagnosed with attention deficit hyperactivity disorder, and had taken various medications, such evidence does not raise a bona fide doubt as to his competency. The mere fact that a defendant has been treated by a psychiatrist does not constitute evidence of *present* incompetency to stand trial. *Montoya*, 291 S.W.3d at 425 (noting that statute focuses on defendant's present ability); *Thomson v. State*, 915 S.W.2d 897, 902 (Tex. App.—Houston [1st Dist.] 1996, pet. ref'd). The relevant considerations are the defendant's level of understanding of the proceedings and ability to consult with counsel. *Montoya*, 291 S.W.3d at 425. Past mental health issues, including prior issues with side effects of medication, raise the issue of incompetency only if there is evidence of recent severe mental illness, at least moderate mental retardation, or bizarre acts by the defendant. *Id.* The record in this case includes no such evidence raising a bona fide doubt about Anderson's competency.

10

Finally, we consider Anderson's conduct at the sentencing hearing. At the hearing Anderson stated that he was "tired," that he did not believe that the court could enhance his punishment with a prior felony, that he did not realize that evidence would be presented at the sentencing hearing, and that he intended to file an appeal even though he had previously agreed to waive that right. Anderson's conduct and comments were neither bizarre nor evidence of confusion or uncertainty sufficient to raise a bona fide doubt about his mental competency. Rather, they demonstrate frustration with the process and dissatisfaction with a longer sentence than anticipated. Anderson did not demonstrate an inability to consult with his lawyer with a reasonable degree of rational understanding or create a real doubt that he possessed an understanding of the proceedings against him. Under these facts, the trial court did not err in failing to conduct a formal competency inquiry. We overrule Anderson's second issue.

## CONCLUSION

Having overruled Anderson's two appellate issues, we affirm the judgment of conviction.

_____

David Puryear, Justice

Before Chief Justice Jones, Justices Puryear and Henson

Affirmed

Filed: August 26, 2010

Do Not Publish

11