FILED IN
COURT OF CRIMINAL APPEALS

April 3, 2015

ABEL ACOSTA, CLERK

PD-1615-14
COURT OF CRIMINAL APPEALS
AUSTIN, TEXAS
Transmitted 4/3/2015 4:20:13 PM
Accepted 4/3/2015 4:29:59 PM
ABEL ACOSTA
CLERK

NO. PD-1615-14

## IN THE COURT OF CRIMINAL APPEALS

**STATE OF TEXAS**,
> Petitioner–Appellee

**vs.**

**WILLIAM SMITH**,
> Respondent–Appellant

State's Petition for Discretionary Review from *William Smith v. State*, No. 13-11-00694-CR in the Thirteenth Court of Appeals, trial cause No. 11-CR-0403-C in the 94th Judicial District Court, Nueces County, the Hon. Bobby Galvan presiding

# BRIEF OF WILLIAM SMITH

Respectfully submitted by:

Donald B. Edwards
State Bar No. 06469050
Law Office of Donald B. Edwards
P.O. Box 3302
Corpus Christi, TX 78463-3302
(361) 887-7007
(361) 887-7009 (fax)

# Table of Contents

Index of Authorities.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

ARGUMENT.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6
    I.  The Transportation Code does not create an exception to the warrant
        requirement to permit warrantless blood draws.. . . . . . . . . . . . . . . 6
    II.  The warrantless blood draw was unconstitutional under the statute as
        applied in this case.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6
    III.  This case is virtually indistinguishable from *Aviles v. State* for Fourth
        Amendment analysis, a case that was vacated and remanded for
        reconsideration in light of *McNeely* for a determination of whether the
        statute was constitutional as applied.. . . . . . . . . . . . . . . . . . . . . . . . 10
    IV.  No other exception or rationale was shown that would permit the taking
        of blood in this case.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11
        1.  The automobile exception. . . . . . . . . . . . . . . . . . . . . . . . . . . 12
        2.  Special needs exception.. . . . . . . . . . . . . . . . . . . . . . . . . . . . 14
        3.  Consent and waiver. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15
        4.  Search incident to arrest.. . . . . . . . . . . . . . . . . . . . . . . . . . . . 16
    V. The other factors argued by the State do not trump the need for Fourth
        Amendment guarantees for a neutral and detached magistrate to make
        a determination of the reasonableness of the forcible extraction of a
        person's blood.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17
    VII. The warrantless extraction of blood has not been shown to be justified.
        . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23
    VIII.  The trial court was made sufficiently aware of the complaint in a
        timely fashion for purposes of preserving error under the Rules of
        Appellate Procedure, and the issue does not otherwise merit review.
        . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

Prayer.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

Certificate of Compliance and Service. . . . . . . . . . . . . . . . . . . . . . . . . . . 28

# Index of Authorities

## Cases

*Aviles v. State, 3. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Allridge v. State*, 850 S.W.2d 471, 492-93 (Tex. Crim. App. 1991). . . . . . . . . . . . 6

*Anderson v. State*, 633 S.W.2d 851 (Tex. Crim. App. 1982). . . . . . . . . . . . . . . . 23

*Aviles v. State*, 385 S.W.3d 110 (Tex. App.–San Antonio 2012, pet. ref'd), vacated, ___ U.S. ___, 134 S.Ct. 902, 187 L.Ed.2d 767 (2014), on remand 443 S.W.3d 291 (Tex. App.–San Antonio 2014). . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Beeman v. State*, 86 S.W.3d 613 (Tex. Crim. App. 2002). . . . . . . . . . . . . . . . . . . . 8

*Cady v. Dombrowski*, 413 U.S. 433, 442 (1973). . . . . . . . . . . . . . . . . . . . . . . . . 11

*Cardwell v. Lewis*, 417 U.S. 583, 588 (1974). . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Carroll v. United States*, 267 U.S. 132, 153, 45 S.Ct. 280, 285, 69 L.Ed. 543 (1925). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Chambers v. Maroney*, 399 U.S. 42, 52 (1970). . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Chapman v. United States*, 365 U.S. 610, 615 (1961). . . . . . . . . . . . . . . . . . . . 7, 17

*Cooper v. California*, 386 U.S. 58, 59 (1967). . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Florida v. Jimeno*, 500 U.S. 248 (1991). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Garza v. State*, 126 S.W.3d 79 (Tex. Crim. App. 2004). . . . . . . . . . . . . . . . . . . . 23

*Knisley v. State*, 81 S.W.3d 478 (Tex.App.-Dallas 2002, pet. ref'd) . . . . . . . . . . . 5

*Masters v. Crouch*, 872 F.2d 1248 (6th Cir. 1989) . . . . . . . . . . . . . . . . . . . . . . . 5

*Miller v. State*, 393 S.W.3d 255 (Tex. Crim. App. 2012) . . . . . . . . . . . . . . . . . . 14

*Missouri v. McNeely*, 133 S.Ct. 1552 (2013). . . . . . . . . . . . . . . . . . . . 4-6, 9, 16

*Rayford v. State*, 125 S.W.3d 521 (Tex. Crim. App. 2003) . . . . . . . . . . . . . . . 13

*Reasor v. State*, 12 S.W.3d 813, 817 (Tex. Crim. App. 2000). . . . . . . . . . . . . . 13

*Riley v. California*, 134 S.Ct. 2473 (2014). . . . . . . . . . . . . . . . . . . . . . . . 14, 20

*Roberts v. Rhode Island*, 239 F.3d 107 (1st Cir. 2001) . . . . . . . . . . . . . . . . . . . 5

*Schneckloth v. Bustamonte*, 412 U.S. 218, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973)
. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Skinner v. Railway Labor Executives' Assn.*, 489 U. S. 602 (1989). . . . . . . . . . . . 5

*South Dakota v. Opperman*, 428 U.S. 364, 367 (1976). . . . . . . . . . . . . . . . . 11, 12

*State ex rel. Lykos v. Fine*, 330 S.W.3d 904 (Tex. Crim. App. 2011) . . . . . . . . . . 7

*State v. Johnston*, 336 S.W.3d 649 (Tex. Crim. App. 2011) . . . . . . . . . . . . . . . . 5

*State v. Villarreal*, Cause No. 13-13-00253-CR January 23, 2014, no pet. h.). . . . 6

*Treasury Employees v. Von Raab*, 489 U. S. 656 (1989). . . . . . . . . . . . . . . . . 7, 17

*United States v. Hernandez*, 901 F. 2d 1217 (5th Cir. 1990).. . . . . . . . . . . . . . 5, 7

*United States v. Robinson*, 414 U. S. 218 (1973). . . . . . . . . . . . . . . . . . . . . . 4, 9

*United States v. Ross*, 456 U.S. 798, 806 (1982). . . . . . . . . . . . . . . . . . . . . . 11

*Winston v. Lee*, 470 U. S. 753 (1985). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

**Court Rules**

TEX. R. APP. P. 33.1(a)(1)(A). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

## ARGUMENT

**I. The Transportation Code does not create an exception to the warrant requirement to permit warrantless blood draws.**

In *State v. Villarreal*, PD-0306-14, this Honorable Court held the Transportation Code does not create an exception to the warrant requirement to permit a warrantless taking of blood. Respondent would contend this Honorable Court directly decided *Villarreal* in light of the controlling precedent of *Missouri v. McNeely*, 133 S.Ct. 1552 (2013). Furthermore, the State's petition and brief fail to address the very important holding of the Court of Appeals–that the statute is constitutional on its face but unconstitutional in its application in this case.

**II. The warrantless blood draw was unconstitutional under the statute as applied in this case.**

The Fourth Amendment provides in relevant part that "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause." U.S. CONSTITUTION, amendment IV. The Supreme Court of the United States has long held that a warrantless search of the person is reasonable only if it falls within a recognized exception. *See, e.g., United States v. Robinson*, 414 U. S. 218, 224 (1973). That principle applies to the type of search at issue in this case,

6

which involved a compelled physical intrusion beneath a DWI suspect's skin and into his veins to obtain a sample of his blood for use as evidence in a criminal investigation. *Missouri v. McNeely*, 133 S.Ct. 1552, 1556 (2013). Such an invasion of bodily integrity implicates an individual's "most personal and deep-rooted expectations of privacy." *Winston v. Lee*, 470 U. S. 753, 760 (1985); *see also Skinner v. Railway Labor Executives' Assn.*, 489 U. S. 602, 616 (1989).

Statutes cannot limit a person's protections under the Fourth Amendment; they can only expand upon them; where the Constitution forbids a search and seizure, a statute cannot authorize one. *State v. Johnston*, 336 S.W.3d 649, 661 (Tex. Crim. App. 2011) (transportation code chapter 724 does not dictate what is constitutionally permissible); *Knisley v. State*, 81 S.W.3d 478, 483 (Tex. App.-Dallas 2002, pet. ref'd) (statutory requirements for blood sampling supplement, not reduce, constitutional requirements). While a statute might describe a situation in which a law enforcement officer may be directed to search for and seize evidence, that statute must conform to Fourth Amendment both on its face and in application. *United States v. Hernandez*, 901 F. 2d 1217, 1221 fn 4 (5th Cir. 1990); *see also Roberts v. Rhode Island*, 239 F.3d 107, 113 (1st Cir. 2001) (holding that a blanket policy of strip-searching arrestees was unreasonable as applied to those arrested for minor offenses); *Masters v. Crouch*, 872 F.2d 1248, 1255 (6th Cir. 1989) ("[A]uthorities may not strip search persons arrested

7

for traffic violations and nonviolent minor offenses solely because such persons ultimately will intermingle with the general population at a jail when there were no circumstances to support a reasonable belief that the detainee will carry weapons or other contraband into the jail.").

The United States Supreme Court recently held the fact that alcohol rapidly dissipates from the bloodstream does not create a per se exigent circumstance. *Missouri v. McNeely*, 133 S. Ct. 1552, 1562, 185 L. Ed. 2d 696 (2013). Instead, the dissipation of alcohol may be a factor, among others, in the exigency analysis under the larger totality of the circumstances test. *See id.* Specifically, the Court held that the trial court should conduct a "careful case-by-case assessment of exigency and . . . [that i]n those drunk-driving investigations where police officers can reasonably obtain a warrant before a blood sample can be drawn without significantly undermining the efficacy of the search, the Fourth Amendment mandates that they do so." *Missouri v. McNeely*, 133 S. Ct. 1552, 1561, 185 L. Ed. 2d 696 (2013). This Honorable Court has previously held the mandatory blood draw provision of the Transportation Code does not address or dispense with the warrant requirement. *State v. Villarreal*, Cause No. 13-13-00253-CR January 23, 2014, no pet. h.).

Furthermore, the mere existence of a statute that might be constitutional on its face does not end the inquiry under the Fourth Amendment about whether it was

8

reasonable in its application. *United States v. Hernandez*, 901 F. 2d 1217, 1221 fn 4 (5th Cir. 1990); *State ex rel. Lykos v. Fine*, 330 S.W.3d 904, 915 (Tex. Crim. App. 2011) . In the present case, the State made no effort to show there was anything that prevented Trooper Anguiano them from obtaining a warrant. Indeed, all the State showed was that the officer made no attempt to even start the process, despite the fact the suspect was in custody for a significant period of time before his blood was taken and was to be held in custody for an indefinite length of time after that.

The issue facing this Honorable Court is not whether a defendant's interest in his body outweighs the State's interest in obtaining evidence for a prosecution. The balancing test is whether the defendant's interest in the privacy of his body outweighs the State's interest in circumventing the warrant requirement. *Chapman v. United States*, 365 U.S. 610, 615 (1961). The State offered nothing to show the need for circumventing the warrant requirement that would outweigh the defendant's expectation to be free from such an intrusive procedure without a determination by a magistrate that such procedure was warranted. There was nothing in this case that takes it out of the importance of having the "interpo[lation of] a neutral magistrate between the citizen and the law enforcement officer." *Treasury Employees v. Von Raab*, 489 U. S. 656, 667 (1989). If anything, the exteme nature of the intrusion and the privacy interests affected require that interpolation.

9

The action by Trooper Anguiano in taking Appellant's blood pursuant to statute but without at first making any effort at determining whether a warrant could be obtained rendered the statute unconstitutional in application as this Honorable Court has previously held in *State v. Villarreal*.

**III.  This case is virtually indistinguishable from *Aviles v. State* for Fourth Amendment analysis, a case that was vacated and remanded for reconsideration in light of *McNeely* for a determination of whether the statute was constitutional as applied.**

In *Aviles v. State*,  385 S.W.3d 110 (Tex. App.–San Antonio 2012, pet. ref'd), vacated, ___ U.S. ___, 134 S.Ct. 902, 187 L.Ed.2d 767 (2014), on remand 443 S.W.3d 291 (Tex. App.–San Antonio 2014), the court noted the arresting officers accessed a database that indicated the arrestee had two prior DWI convictions, requested a sample, then proceeded to take a sample under 724.012(b)(3) without seeking a warrant. *Id.* at 112.  The Fourth Court of Appeals relied on *Beeman v. State*, 86 S.W.3d 613, 616 (Tex. Crim. App. 2002), and held the action was constitutional by way of being authorized by the statute;  however, the Fourth Court of Appeals issued its opinion several months before the Supreme Court decided *McNeely*, so the Supreme Court of the United States vacated the *Aviles* opinion for reconsideration in light of *McNeely.*

10

What the Fourth Court of Appeals failed to do was conduct an analysis of whether the statute was constitutional in application to the facts in *Aviles*. On remand, the Fourth Court of Appeals re-examined the case and held the warrantless blood draw was unconstitutional under the Fourth Amendment. *Aviles*, 443 S.W.3d at 294. The only fact distinguishing the cases is the fact the blood was taken in the infirmary at the magistrate in *Aviles*. *Aviles*, 385 S.W.3d at 116. However, that factual distinction does not control the legal analysis, since the State has the burden to show that its actions in making a warrantless search and seizure fall under a recognized exception. *United States v. Robinson*, 414 U. S. 218, 224 (1973). In this case, the State made no showing of any impossibility or even impracticability of obtaining a warrant. Both *Aviles* and the present case present facts requiring at least an effort to obtain a warrant, since "drunk-driving investigations where police officers can reasonably obtain a warrant before a blood sample can be drawn without significantly undermining the efficacy of the search, the Fourth Amendment mandates that they do so." *Missouri v. McNeely*, 133 S. Ct. 1552, 1561, 185 L. Ed. 2d 696 (2013).

**IV. No other exception or rationale was shown that would permit the taking of blood in this case.**

*1. The automobile exception*

Applying the automobile exception would render all writings on DWI cases meaningless, since every DWI suspect was operating a motor vehicle of some kind. If this was a recognized exception to Fourth Amendment requirements in DWI cases, there would have been no need for hundreds of cases detailing the scope of Fourth Amendment protections afforded DWI suspects. Furthermore, the rationale for the automobile exception disappears when one considers the state already has to the person in custody, so there is no risk, or minimal risk, of the evidence disappearing before a warrant is obtained.

Every defendant suspected of DWI is necessarily found in an automobile. From its inception, the rationale of the automobile exception was stated in terms of the risk the vehicle could transport illegal materials away from the government before it could obtain a warrant for the search.

> [T]he guaranty of freedom from unreasonable searches and seizures by the Fourth Amendment has been construed, practically since the beginning of Government, as recognizing a necessary difference between a search of a store, dwelling house or other structure in respect of which a proper official warrant readily may be obtained, and a search of a ship, motor boat, wagon or automobile, for contraband goods, where it is not practicable to secure a warrant because the vehicle can be quickly moved out of the locality or jurisdiction in which

12

the warrant must be sought." Id., at 153 (emphasis added).

*Carroll v. United States*, 267 U.S. 132, 153, 45 S.Ct. 280, 285, 69 L.Ed. 543 (1925). The capacity to be "quickly moved" was clearly the basis of the holding in Carroll, and our cases have consistently recognized ready mobility as one of the principal bases of the automobile exception. *See, e. g., Cooper v. California*, 386 U.S. 58, 59 (1967); *Chambers v. Maroney*, 399 U.S. 42, 52 (1970); *Cady v. Dombrowski*, 413 U.S. 433, 442 (1973); *Cardwell v. Lewis*, 417 U.S. 583, 588 (1974); *South Dakota v. Opperman*, 428 U.S. 364, 367 (1976). In *Chambers*, for example, commenting on the rationale for the vehicle exception, the Supeme Court noted that "the opportunity to search is fleeting since a car is readily movable." 399 U.S., at 51. In *United States v. Ross*, 456 U.S. 798, 806 (1982), the Court once again emphasized that "an immediate intrusion is necessary" because of "the nature of an automobile in transit . . . ." The mobility of automobiles, we have observed, "creates circumstances of such exigency that, as a practical necessity, rigorous enforcement of the warrant requirement is impossible." *South Dakota v. Opperman*, 428 U.S. at 367.

A reduced expectation of privacy became a second justification for the automobile exception. The existence of a panoply of regulations and requirements concerning motor vehicles give rise to reduced expectations of privacy even in locked

13

compartments which are not accessible or open to view. *South Dakota v. Opperman*, 428 U.S. 364, 368 (1976).

However, neither justification for the automobile exception applies to an arrested defendant's privacy in his own body. He isn't going anywhere, absent a determination by the detaining authorities or a magistrate that he must be released. That an automobile is subject to regulation and inspection does not mean a person does not have an expectation of privacy in his own skin. A determination to force a penetration of the skin to invade the ultimate sanctuary of a person's privacy–his body–must be shown to be reasonable under the circumstances, which is exactly the meaning of *McNeely*.

### 2. *Special needs exception*

The special needs exception is at its strongest when the warrant requirement might frustrate the purposes of the State in obtaining the evidence. *Skinner v. Railway Labor Executives' Association*, 489 U.S. 602, 623 (1989). There has been no showing that the State's need in securing blood-alcohol evidence is frustrated by requiring the officer making the arrest to apply for a warrant. As noted by the Supreme Court in *McNeely*, experts can easily project blood-alcohol levels from metabolization rates and the possible delay caused by applying for a warrant can't

justify circumventing the warrant requirement. Futhermore, *Skinner* is distinguishable on the fact that the warrantless search and seizure being upheld as constitutional was based on a urine test, not on the more intrusive invasion of the skin to extract blood, a factor the Supreme Court found highly important in *McNeely*.

### 3. Consent and waiver.

Warrantless searches are "per se unreasonable," unless they fall under one of a few specific exceptions. *Rayford v. State*, 125 S.W.3d 521, 528 (Tex. Crim. App. 2003) (citing *Schneckloth v. Bustamonte*, 412 U.S. 218, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973)); *Reasor v. State*, 12 S.W.3d 813, 817 (Tex. Crim. App. 2000). Consent to search is one of the well-established exceptions to the constitutional requirements that a police officer have both a warrant and probable cause before conducting a search. *Schneckloth v. Bustamonte*, 412 U.S. 218, 219, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973). Texas law requires the State to prove voluntariness of consent to search by clear and convincing evidence, rather than by a mere preponderance of the evidence. *Reasor*, 12 S.W.3d at 817. To be valid, consent to search must be positive and unequivocal and must not be the product of duress or coercion, either express or implied. *Id*. at 818. Consent to search is not shown by acquiescence to a claim of lawful authority. *Allridge v. State*, 850 S.W.2d 471, 492-93 (Tex. Crim. App. 1991).

15

In this case, all that was shown was a claim of authority to take the blood and a suspect who made no statement in response. At most, this shows only acquiesence to the claim of authority and does not establish consent to search.

The State argues that the statute creates implied consent and waiver of the right to object to the taking of blood. However, caselaw indicates that consent, to be valid, must also be subject to limitation and withdrawal. *Florida v. Jimeno*, 500 U.S. 248, 252 (1991) (suspect may "delimit as he chooses the scope of the search to which he consents"); *Miller v. State*, 393 S.W.3d 255, 266 (Tex. Crim. App. 2012) (stating that it is "undisputed" that consent "may be limited or revoked").

Mr. Smith denied consent in this case and merely submitted to the taking of his blood when told it was mandatory. RR Vol. 1, p. 44, ll. 8-25. Under such circumstances, it cannot be said that the search and seizure was consented to by William Smith, despite any claim of implied consent under statutory authority.

### 4. Search incident to arrest

A criminal defendant does not lose all Fourth Amendment protections as a result of being arrested. For example, the Supreme Court recently held post arrest search of a defendant's cell phone was unconstitutional when done without a warrant. *Riley v. California*, 134 S.Ct. 2473, 2488 (2014). It noted significant privacy

16

concerns in the wealth of information obtainable from the device. *Id.* at 2489-90.

There is still a balancing test to be applied between the state's need for the evidence and the privacy interest of the defendant. This issue was at least impliedly resolved in the defendant's favor in DWI cases by the Supreme Court in *McNeely*. The defendant in *McNeely* was arrested for DWI before his blood was forcibly extracted without a warrant.

**V. The other factors argued by the State do not trump the need for Fourth Amendment guarantees for a neutral and detached magistrate to make a determination of the reasonableness of the forcible extraction of a person's blood.**

The State offers several factors to suggest the statute should be upheld against Fourth Amendment challenges without really admitting the nature of the holding of the Court of Appeals. The Court of Appeals did not hold the statute unconstitutional. It merely held that the statute was unconstitutionally applied in this case by extracting the blood from Mr. Smith without first securing a warrant.

Some of the factors suggested by the State to permit the warrantless extraction have nothing to do with the issue of balancing the defendant's privacy interests with the interest of the State in obtaining the evidence or the role to be played by a neutral magistrate. For example, that the extraction might occur in sanitary conditions by a trained professional has nothing to do with privacy concerns or the burden of

17

obtaining a warrant.

The State attempts to argue the nature of the privacy interest has been defined and reduced by legislators. Such an argument would render the Fourth Amendment meaningless, for any body politic could then would redefine privacy as that which is not subject to statutorily authorized intrusion. States cannot give blanket authorization for searching the body cavities of students because it has banned guns and drugs at schools.

Indeed, the Supreme Court of the United States rejected the State's position that taking blood constitutes a minimal intrusion and took pains in *McNeely* to describe the heightened interest in the sanctity of the person, saying:

> The fact that people are "accorded less privacy in . . . automobiles because of th[e] compelling governmental need for regulation," *California v. Carney*, 471 U. S. 386, 392 (1985), does not diminish a motorist's privacy interest in preventing an agent of the government from piercing his skin.

*Missouri v. McNeely*, 133 S. Ct. 1552. The United States Supreme Court thus specifically has ruled the motorist's privacy interest in his own skin prevents an automatic forfeiture of that privacy upon suspicion of driving while intoxicated.

The issue facing this Honorable Court is not whether the defendant's interest in his body outweighs the State's interest in obtaining evidence for a prosecution. The balancing test is whether the defendant's interest in the privacy of his body

18

outweighs the State's interest in circumventing the warrant requirement. *Chapman v. United States*, 365 U.S. 610, 615 (1961). The State offered nothing to show the need for circumventing the warrant requirement that would outweigh the defendant's expectation to be free from such an intrusive procedure without a determination by a magistrate that such procedure was warranted. There was nothing in this case that takes it out of the importance of having the "interpo[lation of] a neutral magistrate between the citizen and the law enforcement officer." *Treasury Employees v. Von Raab*, 489 U. S. 656, 667 (1989). If anything, exteme nature of the intrusion and the privacy interests affected require that interpolation.

The State attempts to diminish the nature of the intrusion by arguing the defendant has not been deprived of freedom in that he has already been arrested and to diminish the privacy in one's blood by reducing the intrusion into the person to take blood to a "pin prick." This argument ignores the incredible wealth of information available as a result of the taking of the blood.

A person's blood contains information regarding his identity, his parentage, his medical conditions, no matter whether the State presently tests that blood only for blood alcohol concentration. Under statute, biological specimens that might identify a defendant must be retained for 40 years. TEX. CODE CRIM. PROC. art 38.43. Thus a person's DNA, from which is identity and parentage may be established become the

19

property of the State for forty years. The blood also provides information concerning medical history, including present and past diseases. The wealth of information stored in a person's blood which will then be held by the state for what is likely to be the suspect's entire life is precisely the reason why such an intrusive seizure must be carefully guarded against by the interpolation of a detached, neutral magistrate.

The State also argues a repeat offender and an arrestee have diminished expectations of privacy that would factor into allowing warrantless extraction of blood from a DWI suspect. Again, these are matters that were already before the Supreme Court in *McNeely* and were not found in that case to justify the taking of blood without a warrant. It should be noted that the State cites only cases referring to parolees and probationers having diminished expectations of privacy. It cites no cases regarding whether such expectations should be diminished with respect to a person who has been convicted, served his sentence, and is no longer under any disability for prior conduct.

Finally, mistake of law might be a valid excuse for an individual officer acting in reliance thereon, but it cannot serve as a valid excuse for a legislature. The State's petition for discretionary review raises only the issue of whether the statue is a valid alternative to the warrant requirement, not whether the statute was constitutional as applied, so the factor of whether the Trooper's acts were justified by the statute

should have no bearing on the constitutionality of the statute. Furthermore, to expand the mistake of law defense to justify the action of a legislature would be to invite legislatures to draft unconstitutional law to expand the ability of police forces to conduct intrusive searches and seizures.

**VI. The warrantless taking of blood from a DWI suspect is both a search and a seizure.**

The State argues the Supreme Court of the United States has mis-categorized the taking of blood from a DWI suspect as a "search" rather than a "seizure," and that seizures are subject to less scrutiny under the Fourth Amendment. William Smith responds that taking blood from a DWI suspect is in fact both a search and a seizure.

Blood, in and of itself, is not the evidence the State requires to prove guilt in a DWI case. The State must also examine the contents of the blood to determine blood alcohol content. Taking blood and putting the same through chemical analysis is thus similar to taking a person's cellphone and examining its contents. In *Riley v. California*, 134 S.Ct. 2473 (2014), the Supreme Court of the United States held warrantless searches of an arrestee's cellphone violated his Fourth Amendment rights. Chief Justice Roberts, writing for an eight justice majority, rejecting arguments that such a search was needed for officer safety (*Id.* at 2484-86) or to preserve evidence. (*Id*. at 2486-88). He then cited the significance of the wealth of information available on the cell phone not just for quantity, but also for quality. *Id.* at 2489-91.

No less privacy concerns are implicated in taking a person's blood than are implicated in seizing a person's cell phone. Indeed, Supreme Court has signaled that both the taking of the blood out of the body is incredibly intrusive and warranting

22

heightened Fourth Amendment scrutiny. Since *McNeely* it has held post seizure searches into deeply personal information also warrant heightened Fourth Amendment scrutiny. Since the State of Texas is attempting to defend both the forcible extraction of fluid from a person's body and the subsequent search of that fluid for evidence in a criminal prosecution, the degree of scrutiny shown by the United States Supreme Court in applies to both *McNeely* and in *Riley* applies to both stages of the extraction and analysis.

**VII. The warrantless extraction of blood has not been shown to be justified.**

The Court of Appeals held the statute was unconstitutionally applied by Trooper Anguiano by his warrantless extraction of Mr. Smith's blood. The Court did not hold the statute unconstitutional per se. It did not claim the State had no interest in securing evidence. It acknowledged the validity the State's program of removing driving privileges from persons who refuse to consent to blood or breath examinations.

This case isn't about whether a legislature can punish a driver for refusing a test by revoking a license or even charging with an offense for refusing to comply with the request to peform the test. This case is about whether an officer suspecting a driver is intoxicated has to at least try to get a warrant before having that person's

23

blood forcibly extracted. The Supreme Court has given strong indications in both *Missouri v. McNeely* and *Riley v. California* that it is giving new recognition to the warrant clause. It recognizes the degree of intrusion and the depth of information available upon such searches and seizures in this modern age is so great that a neutral and detached magistrate is necessary to protect individuals from government intrusions, even after arrests.

Accordingly, this Honorable Court should deny the State's petition for discretionary review and affirm the judgment of the Court of Appeals.

**VIII. The trial court was made sufficiently aware of the complaint in a timely fashion for purposes of preserving error under the Rules of Appellate Procedure, and the issue does not otherwise merit review.**

The State complains Respondent's counsel did not timely object to the admission of the blood test results and thus waived the issue on appeal. Respondent contends the objection was sufficient and timely to prevent the trial court from considering inadmissible evidence as the trier of fact. Furthermore, if the objection is held to be untimely, the inevitable result will be a habeas petition urging ineffective assistance of counsel for failing to object in a timely fashion to evidence he showed himself to understand was inadmissible at the time of trial, such ineffective assistance being more than sufficient to undermine the outcome of the trial.

The purpose of a timely objection is to give the trial judge the opportunity to cure error. *See generally Anderson v. State*, 633 S.W.2d 851 (Tex. Crim. App. 1982). This was a trial to the bench, not to a jury. Judges sitting as triers of fact may be required to hear about the nature of seized evidence before having to rule on motions to disregard or suppress the same, yet still be tasked to judge the case after learning of the evidence that it has to disregard. *Garza v. State*, 126 S.W.3d 79, 83 (Tex. Crim. App. 2004). The trial judge is presumed to be able to disregard on request improperly admitted evidence, so "the time at which a motion is re-urged or a ruling is obtained is not as crucial, because the judge, as fact-finder, is aware of the substance of the motion regardless of when the defendant finally argues it. Conversely, in a jury trial, the timing of an objection and ruling is much more important because, if the objection is not made early enough and a ruling is not obtained, the jury is able to hear evidence which it might never have heard at all." *Id.*

In this case, it is true that the blood test results were revealed to the trial court before Respondent leveled his many objections to the taking and testing of the sample; however, immediately upon the proffer of that evidence, Respondent objected on many grounds, and the case essentially stopped for a long discussion about the taking of the blood without a warrant and whether such taking was unconstitutional.

After a long discussion about the nature of Respondent's objection to the evidence, the trial court stated from the bench that it understood Respondent to be making an objection on Fourth Amendment search and seizure grounds. RR Vol. 1, p. 84, ll. 10-25. When the State reoffered the exhibit of the blood test results, defense counsel reurged his objections. RR Vol. 1, p. 93, ll. 18-25. The trial court stated it would reserve ruling on the constitutional issue. RR Vol. 1, p. 95, ll. 17-19. At the close of evidence, defense moved for an "instructed verdict," complaining again that the blood was taken in violation of the Fourth Amendment. RR Vol. 2, p. 21, ll. 8-11.

This was more than adequate to "make the trial court aware of the complaint." TEX. R. APP. P. 33.1(a)(1)(A). It actually made the trial court aware of the complaint that Respondent's blood was illegally seized without a warrant or express consent and the test results should be held inadmissible. The trial court could have disregarded the evidence but chose not to do so, instead relying on the test results to find Respondent guilty. RR Vol. 2, p. 26, l. 21 through p. 27, l. 11.

The Thirteenth Court of Appeals' determination that the issue was preserved was neither against the plain language of the rule, in conflict with decisions of other courts of appeals, in conflict with rulings by this Honorable Court, or so far departed from the ordinary course of judicial procedure to require this Honorable Court to address the decision of the lower court.

Even if this Honorable Court were to hold the objection was not timely, there can be no viable trial strategy in waiting behind the log to permit the introduction of inculpatory evidence before objecting to the same. Trial counsel's objections showed he was aware of the need to make the Fourth Amendment complaint, but he might have been tardy in doing so. Valuable judicial resources would be wasted in the exercise of reversing the decision of the Court of Appeals and requiring Respondent and the State (and the courts) to entertain an 11.07 petition to get to the same result already reached by the Thirteenth Court of Appeals in this case.

Accordingly, this Honorable Court should deny the State's petition for discretionary review and affirm the judgment of the Court of Appeals.

**Prayer**

Respondent respectfully requests this Honorable Court to deny the State's Petition for Discretionary Review.

Respectfully submitted,

/s/ Donald B. Edwards
Donald B. Edwards
Attorney for Respondent
State Bar No. 06469050
Law Office of Donald B. Edwards
P.O. Box 3302

27

Corpus Christi, TX 78463-3302
(361) 887-7007
(361) 887-7009 (fax)

**Certificate of Compliance and Service**

I, Donald B. Edwards, certify delivered a copy of this brief to the Nueces County District Attorney's Office, attention Mr. Doug Norman, and to the Office of the State Prosecuting Attorney on April 3, 2015, via the State's electronic filing and service system, and that the brief contains 4918 words in those matters not exempted by Rule 9.

_____
Donald B. Edwards