George Robert KNISLEY, Appellant,

v.

The STATE of Texas, Appellee.

No. 05–01–00326–CR.

Court of Appeals of Texas,
Dallas.

July 3, 2002.

George Milner, Milner, Goranson, Sorrells, Udashen & Wells, Dallas, for Appellant.

William T. (Bill) Hill, Jr., District Attorney, Kimberly A. Schaefer, Assistant District Attorney, for State.

Before Justices MORRIS, WHITTINGTON, and RICHTER.

## OPINION

Opinion by Justice RICHTER.

Appellant appeals his conviction for driving while intoxicated. In two points of error, appellant complains the trial court erroneously denied his motion to suppress the blood alcohol results obtained from a blood specimen. Appellant argues that a person must be under arrest before section 724.014(a) of the Texas Transportation Code permits the lawful taking of a blood specimen from a person who is dead, unconscious, or otherwise incapable of refusal. Additionally, appellant contends the State lacked probable cause to arrest him. The State argues that the applicability of section 724.014(a) is not conditioned upon an arrest, and that there was probable cause to arrest appellant for driving while intoxicated. We affirm the trial court's judgment.

## Background

Around 8:00 p.m. on the clear evening of February 7, 2000, appellant was involved in a single vehicle accident. Officer Wesley Bement arrived at the scene and observed a motorcycle lying on the ground. While paramedics attended to appellant, Bement observed the accident scene and saw gouges in the pavement about twenty feet in length. Thereafter, Bement attempted to speak with appellant in the back of the ambulance while awaiting the arrival of Care Flight. Bement asked appellant a "couple simple questions," such

as his name and phone number. Appellant could not remember either. However, appellant repeatedly asked what had happened, which Bement testified was indicative of "some sort of head injury." Due to the bandaging, Bement did not see the extent of appellant's injuries. While attempting to interview appellant, Bement detected a strong odor of alcohol. Appellant was transported to the hospital by Care Flight, while Bement finished gathering evidence from the scene and gathered the paperwork he needed.

At the hospital, appellant was seen by a physician at 8:57 p.m., at which time appellant was "active, alert, and oriented." The nurse's log indicated that at 10:10 p.m., appellant was "asleep, snoring loudly, [and] arouses easily." Sometime around 10:25 p.m., the hospital performed a "CT" scan and sedated appellant with Ativan. At approximately 10:30 p.m., Bement arrived at the hospital, where he found appellant in the emergency room. Bement testified that he attempted to speak to appellant, but he appeared to be unconscious. However, the nurse's log indicated that appellant was able to be aroused by verbal stimuli. Bement filled out the appropriate paperwork, presented it to the nurse, and requested the nurse draw a blood specimen from appellant. The nurse withdrew the blood specimen from appellant and presented it to Bement, who transported it to the Parkland Emergency Room evidence locker. The blood test revealed appellant's blood alcohol level to be .12.

Appellant filed a pretrial motion to suppress the results of the blood alcohol test performed on the blood specimen. At trial, appellant argued that the specimen was illegally drawn, and, therefore, the blood test results were inadmissible. The trial

court took appellant's motion to suppress under advisement throughout the trial, which was before the court without a jury. At the conclusion of the State's case, the trial court denied appellant's motion. Thereafter, the trial court found appellant guilty.

■■■ This Court reviews a trial court's ruling on a motion to suppress under the bifurcated standard enunciated in *Guzman v. State*, 955 S.W.2d 85 (Tex.Crim.App. 1997). We give almost total deference to the trial court's findings of historical fact and review *de novo* the trial court's application of the law. *See Guzman*, 955 S.W.2d at 89. It has long been the law that when a trial court's decision to admit or exclude evidence is correct based on any theory of law applicable to the case, the trial court's decision will be affirmed. *Romero v. State*, 800 S.W.2d 539, 543 (Tex. Crim.App.1990). This is the case even if the trial judge has given an incorrect reason. *Romero*, 800 S.W.2d at 543.

In this driving while intoxicated case, appellant contends the results of his blood alcohol test were inadmissible as an illegal search and seizure. Appellant argues the results are inadmissible on both statutory and constitutional grounds. Appellant contends that the blood test results are statutorily inadmissible under the Texas Transportation Code because sections 724.011 and 724.014 of the transportation code are inapplicable in this case, but were used as the authority to withdraw a blood specimen. Appellant argues the blood test results are constitutionally inadmissible as an illegal search and seizure because the State failed to demonstrate probable cause to arrest. We address each of these arguments in turn.

### Transportation Code

■■■ Appellant first asserts the blood test results are statutorily inadmissible un-

der the Texas Transportation Code. Appellant's argument revolves around two provisions of the transportation code, sections 724.011 ("implied consent statute") and 724.014 ("withdrawal of consent statute"). The implied consent statute provides in part that,

*[i]f a person is arrested* for an offense arising out of acts alleged to have been committed while the person was operating a motor vehicle in a public place, or a watercraft, while intoxicated, or an offense under section 106.41, Alcoholic Beverage Code, the person is deemed to have consented, subject to this chapter, to submit to the taking of one or more specimens of the person's breath or blood for analysis to determine the alcohol concentration or the presence in the person's body of a controlled substance, drug, dangerous drug, or other substance.

Tex. Transp. Code Ann. § 724.011 (Vernon Supp.2002) (emphasis added).

The withdrawal of consent statute, entitled "Person Incapable of Refusal," provides in part that "[a] person who is dead, unconscious, or otherwise incapable of refusal *is considered not to have withdrawn consent provided by section 724.011.*" Tex. Transp. Code Ann. § 724.014(a) (Vernon 1999) (emphasis added).

■■■ When construing a statute we begin with the objective to discover and give effect to the legislature's intent in enacting it. *Boykin v. State*, 818 S.W.2d 782, 785 (Tex.Crim.App.1991). In attempting to discover the legislature's intent, we first look to the plain meaning of the statute and apply its meaning in accordance therewith, unless the language is ambiguous or the result would lead to absurd consequences. *Boykin*, 818 S.W.2d at 785; *see also Badgett v. State*, 42 S.W.3d 136, 138 (Tex.Crim.App.2001) (construing sec-

tion 724.012(b) of the transportation code). We give words and phrases contained in the statute their plain meaning. *Boykin,* 818 S.W.2d at 785. We review appellant's complaints with these standards in mind.

Appellant complains the trial court erroneously denied his motion to suppress, because the blood test results were inadmissible under the relevant statutes of the transportation code. Specifically, appellant complains the implied consent and withdrawal of implied consent statutes are inapplicable in this case because he was not under arrest, and therefore, cannot serve as authority by which to withdraw a specimen. The State responds that even absent an arrest, the withdrawal of implied consent statute permits "specimens to be drawn from persons who are dead, unconscious, or otherwise incapable of withdrawing implied consent." Additionally, the State argues that construing the withdrawal of consent statute as requiring an arrest to permit the withdraw of blood from a person who is unconscious, dead, or otherwise incapable of refusal would nullify it, because the State does not arrest people who are dead, unconscious, or incapable of refusal.

The withdrawal of consent statute of the transportation code, by its plain meaning, applies to prevent the withdrawal of consent that is implied under the implied consent statute. Under the implied consent statute, consent is not implied *absent an arrest.* Accordingly, the withdrawal of consent statute requires an arrest in order to be applicable.

The State argues that the withdrawal of consent statute should be read without reference to the implied consent statute. The State contends that when read alone, the withdrawal of consent statute permits the State to draw a blood specimen from a motorist who is dead, unconscious, or otherwise incapable of refusal without a show-

ing of any level of suspicion. The State's argument is not well taken. The State's interpretation requires us to read the withdrawal of consent statute in a vacuum outside the context of chapter 724 as a whole and defies the objective of the statute.

In addition, permitting the taking of a blood specimen absent more than a requirement that a motorist be dead, unconscious, or otherwise incapable of refusal would be an application that violates well established search and seizure principles. *See Schmerber v. California,* 384 U.S. 757, 767–68, 86 S.Ct. 1826, 16 L.Ed.2d 908 (1966)(holding that the lawful taking of a blood specimen requires probable cause, exigent circumstances and a reasonable method of extraction); *see also Aliff v. State,* 627 S.W.2d 166, 170 (Tex. Crim.App.1982). The State asks us to read the withdrawal of consent statute as removing any requirement that the State possess any level of suspicion to conduct a search. We decline to do so. The withdrawal of consent statute does not permit the State to draw a blood specimen from an unsuspecting, unconscious motorist to gain probable cause to arrest. The trial court misinterpreted section 724.014(a) when it concluded an arrest was not necessary for the withdrawal of a blood specimen.

In the instant case, it is undisputed that appellant was not under arrest at the time Bement asked the nurse to draw a specimen of his blood. Therefore, the implied consent and withdrawal of consent statutes are not applicable to this case. *See Aliff,* 627 S.W.2d at 168–69 (construing predecessor statute to section 724.011). The trial court erred in concluding otherwise.

Additionally, the State argues construction of the withdrawal of implied consent statute as requiring an arrest would nullify

the statute. We conclude such an argument is misguided. A motorist who is rendered dead, unconscious, or otherwise incapable of refusal, absent arrest remains subject to general search and seizure protections that require probable cause. The purpose of the statute is to supplement protections afforded under the state and federal constitutions. Construing the statute to require arrest to be applicable is in accordance with that purpose.

We find the withdrawal of consent statute does not apply in this case. We sustain appellant's first point of error as to the applicability of the statute. Additionally, because the statute does not apply in this case, we overrule appellant's point of error to the extent that he argues the *lack of an arrest* is a statutory violation rendering the blood test results inadmissible. However, our analysis of the admissibility of the blood test results does not end here. We must determine whether the State established the existence of *probable cause to arrest* appellant, thereby permitting the lawful seizure of appellant's blood specimen.

### Probable Cause

 Appellant next contends the trial court's denial of his motion to suppress was erroneous on constitutional grounds. The taking of a blood specimen is a search and seizure under both the federal and Texas Constitutions. *Schmerber*, 384 U.S. at 767–68, 86 S.Ct. 1826; *Aliff*, 627 S.W.2d at 170. However, the warrantless taking of a blood sample is not an unreasonable search and seizure so long as probable cause to arrest exists, the method of extraction is reasonable, and there are exigent circumstances. *Schmerber*, 384 U.S. at 767–68, 86 S.Ct. 1826; *Aliff*, 627 S.W.2d at 170. Statutes dictat-

ing the requirements necessary for the lawful taking of a blood or breath specimen have been construed to supplement, not reduce, constitutional constraints. *See Aliff*, 627 S.W.2d at 168. Appellant argues that the taking of his blood specimen and the subsequent testing for blood alcohol level was an illegal search and seizure, because the officer lacked probable cause to arrest him prior to the taking of the blood specimen[1]. We are required to affirm a trial court's decision on a motion to suppress if it is correct under any theory of law; therefore, we must determine whether the State possessed probable cause to arrest appellant for driving while intoxicated. *Romero*, 800 S.W.2d at 543.

 When the police have reasonably trustworthy information sufficient to warrant a reasonable person to believe a particular person has committed or is committing an offense, probable cause to arrest exists. *Guzman*, 955 S.W.2d at 87. Probable cause is examined in light of the totality of the circumstances established by the evidence. *Amores v. State*, 816 S.W.2d 407, 413 (Tex.Crim.App.1991). "Probable cause deals with probabilities; it requires more than mere suspicion but far less evidence than that needed to support a conviction or even that needed to support a finding by a preponderance of the evidence." *Guzman*, 955 S.W.2d at 87. In the instant case, no findings of fact were filed regarding the existence of probable cause; therefore, we must view the evidence in the light most favorable to the trial court's ruling. *See State v. Ross*, 32 S.W.3d 853, 855–56 (Tex.Crim.App.2000).

The facts surrounding appellant's accident and subsequent transport to the hospital are uncontradicted. The weather on the day of the accident was clear. Appel-

---

**1.** Appellant does not argue the lack of exigent circumstances or a unreasonable method of extraction. Therefore, we do not address them here.

lant's motorcycle was the only vehicle involved in the accident, and there were gouges in the pavement twenty feet in length. Based upon these facts, Bement could infer the accident was due to the loss of driver control. When asked, appellant was unable to answer simple questions such as what his name and telephone number were. Appellant repeatedly asked what happened and had to be told that he was involved in an accident. Finally, appellant smelled strongly of alcohol. We conclude, based on the record before the trial court, that the State established Bement possessed probable cause to arrest appellant at the time the blood was drawn. We overrule appellant's second point of error.

We affirm the trial court's judgment.