Charles David WASHBURN, Appellant,

v.

The STATE of Texas, Appellee.

No. 06–07–00041–CR.

Court of Appeals of Texas, Texarkana.

Submitted Aug. 7, 2007.

Decided Sept. 5, 2007.

David E. Moore, Gregory Waldron, Longview, for appellant.

William M. Jennings, Dist. Atty., W. Ty Wilson, Asst. Dist. Atty., Longview, for appellee.

Before MORRISS, C.J., CARTER and MOSELEY, JJ.

## OPINION

Opinion by Justice CARTER.

Charles David Washburn appeals from his conviction for driving while intoxicated (DWI). When dispatched to the scene of a single vehicle accident, Trooper Jonathon Anderson found Washburn sitting on the tailgate of a truck. Washburn was injured, and his face was covered in blood. Washburn admitted drinking, and Anderson could detect the odor of alcohol on or about Washburn's person. At the hospital, Anderson requested a specimen of blood, provided the warnings required by statute to be given to an arrested person, and apprised Washburn of the consequences for refusing to provide a requested specimen of blood. The warning, form DIC–24, read by Anderson, begins: "You are under arrest for an offense...." Washburn consented to providing a specimen of blood. After the trial court denied Washburn's motion to suppress the blood specimen, Washburn pled nolo contendere and the trial court found Washburn guilty. The trial court assessed punishment at 180 days in the county jail, probated for fifteen months. Washburn appeals, claiming the trial court erred in denying the motion to suppress. We affirm.

In his sole point of error, Washburn argues the trial court erred in denying the motion to suppress because the blood specimen was obtained illegally as a result of unlawful coercion and duress. According to Washburn, Anderson incorrectly informed Washburn his driver's license would be suspended if he refused to provide a blood specimen. Washburn contends that, because he was not under arrest, his driver's license could not be suspended. At the hearing, Washburn testified he would have refused the re-

quest if he had not been incorrectly informed by the police officer.

■ We review the trial court's decision on a motion to suppress evidence by applying a bifurcated standard of review deferring to the trial court's determination of historical facts that depend on credibility, but reviewing de novo the trial court's application of the law. *Wiede v. State*, 214 S.W.3d 17, 25 (Tex.Crim.App.2007); *see Guzman v. State*, 955 S.W.2d 85, 89 (Tex. Crim.App.1997). The trial court's evidentiary ruling "will be upheld on appeal if it is correct on any theory of law that finds support in the record." *Gonzalez v. State*, 195 S.W.3d 114, 126 (Tex.Crim.App.2006); *see Romero v. State*, 800 S.W.2d 539, 543 (Tex.Crim.App.1990). Generally, we review de novo determinations of reasonable suspicion and probable cause after granting deference to the trial court's determination of historical facts. *Guzman*, 955 S.W.2d at 87.

■ The Fourth Amendment to the United States Constitution and Article I, Section 9 of the Texas Constitution guarantee the right to be secure against unreasonable searches. U.S. CONST. amend. IV; TEX. CONST. art. I, § 9. The taking of a blood specimen is considered a search and seizure within the meaning of the Fourth Amendment. *Knisley v. State*, 81 S.W.3d 478, 483 (Tex.App.-Dallas 2002, pet. ref'd); *see Schmerber v. California*, 384 U.S. 757, 770, 86 S.Ct. 1826, 16 L.Ed.2d 908 (1966) (search reasonable due to exigent circumstances). The defendant alleging a Fourth Amendment violation bears the burden of producing some evidence that rebuts the presumption of proper police conduct. *Amador v. State*, 221 S.W.3d 666, 672 (Tex. Crim.App.2007). "A defendant meets his initial burden of proof by establishing that a search or seizure occurred without a warrant." *Id.* The burden then shifts to the State to prove that the search or seizure was nonetheless reasonable under the totality of the circumstances. *Id.* at 672–73. Under Article 38.23, evidence must be excluded once a causal connection between the illegality and the evidence is established. *Roquemore v. State*, 60 S.W.3d 862, 870 (Tex.Crim.App.2001); *State v. Daugherty*, 931 S.W.2d 268, 270 (Tex.Crim. App.1996); *see* TEX.CODE CRIM. PROC. ANN. art. 38.23 (Vernon 2005).

■ The Texas Transportation Code provides that a person who has been arrested for an offense arising out of acts committed while the person was operating a motor vehicle in a public place while intoxicated is deemed to have consented to the taking of one or more specimens of breath or blood for analysis to determine the alcohol concentration or the presence of a controlled substance. TEX. TRANSP. CODE ANN. § 724.011 (Vernon 1999); *Coggins v. State*, 160 S.W.3d 177, 179 (Tex. App.-Texarkana 2005, no pet.). However, the person retains an absolute right to refuse a test.[1] TEX. TRANSP. CODE ANN. § 724.013 (Vernon 1999); *Coggins*, 160 S.W.3d at 179. Consent may be involuntary if induced by an officer's misstatement of the consequences of refusal.[2]

1. An exception to the right to withdraw the implied consent exists if the requirements of Section 724.012(b) are satisfied. *See* TEX. TRANSP. CODE ANN. § 724.012 (Vernon Supp. 2006); *Badgett v. State*, 42 S.W.3d 136, 138–39 (Tex.Crim.App.2001); *Broadnax v. State*, 995 S.W.2d 900, 904 (Tex.App.-Austin 1999, no pet.). The predicates for taking an invol-

untary blood specimen were not established in this case.

2. *See Erdman v. State*, 861 S.W.2d 890, 894 (Tex.Crim.App.1993); *State v. Woehst*, 175 S.W.3d 329, 333 (Tex.App.-Houston [1st Dist.] 2004, no pet.) (defendant established a causal connection between the officer's misinformation and her consent); *State v. Sells*, 798

The Texas Transportation Code only requires an officer to give the statutory warnings when the person has been arrested. *See, e.g.,* TEX. TRANSP. CODE ANN. § 724.011 ("If a person is arrested . . . ."); and TEX. TRANSP. CODE ANN. § 724.012 ("One or more specimens . . . may be taken if the person is arrested. . . ."). Because the warnings are only required when a suspect is under arrest, Washburn claims Trooper Anderson incorrectly informed him that his driver's license would be suspended if he refused to provide the specimen.[3] Washburn's argument requires us to first determine whether Washburn was under arrest at the time the specimen was requested and then whether Washburn's consent was voluntary.

**Washburn Was Under Arrest at the Time of the Request**

■ An individual is arrested when he or she has been actually placed under restraint or taken into custody. TEX.CODE CRIM. PROC. ANN. art. 15.22 (Vernon 2005). "A person is in 'custody' only if, under the circumstances, a reasonable person would believe that his freedom of movement was restrained to the degree associated with a formal arrest." *Dowthitt v. State,* 931 S.W.2d 244, 254 (Tex.Crim.App.1996) (citing *Stansbury v. California,* 511 U.S. 318, 114 S.Ct. 1526, 128 L.Ed.2d 293 (1994)). At least four general situations may constitute custody: (1) the suspect is physically deprived of his or her freedom of action in any significant way, (2) a law enforcement officer tells the suspect that he or she cannot leave, (3) law enforcement officers create a situation that would lead a reasonable person to believe that his or her freedom of movement has been significantly restricted, and (4) there is probable cause to arrest and law enforcement officers do not tell the suspect that he or she is free to leave. *Dowthitt,* 931 S.W.2d at 255. The Texas Court of Criminal Appeals has explained the fourth situation as follows:

> the officers' knowledge of probable cause be manifested to the suspect. Such manifestation could occur if information substantiating probable cause is related by the officers to the suspect or by the suspect to the officers. Moreover, given our emphasis on probable cause as a "factor" in other cases, situation four does not automatically establish custody; rather, custody is established if the manifestation of probable cause, combined with other circumstances, would lead a reasonable person to believe that he is under restraint to the degree associated with an arrest.

*Id.*

■ Trooper Anderson had probable cause to arrest Washburn and did not inform Washburn that he was free to leave. Washburn's car collided with a tree in a suspicious manner. Anderson testified there were no passengers involved in the accident. The wrecked vehicle Washburn was sitting on when Anderson arrived was, according to information obtained after checking the license plate number, held in Washburn's name. At the time of the accident, the road was dry and

---

S.W.2d 865, 867 (Tex.App.-Austin 1990, no pet.).

**3.** We note the Dallas Court of Appeals has held consent under the implied consent statute is "not implied *absent an arrest*" and the withdrawal of consent statutes are not applicable when the suspect has yet to be arrested. *Knisley,* 81 S.W.3d at 482; *see* TEX. TRANSP.

CODE ANN §§ 724.001–.014 (Vernon 1999 & Supp.2006). Because, as discussed below, Washburn was under arrest at the time Trooper Anderson requested the specimen, it is not necessary for us to determine whether a suspect's driver's license can be revoked if the request is made when the suspect is not under arrest.

Washburn's car began to skid while in the lane designated for oncoming traffic. Washburn exhibited numerous signs of intoxication. He admitted drinking, had slurred speech, and Anderson could detect the odor of alcohol on or about Washburn's person. We conclude Anderson had probable cause to arrest Washburn for DWI. *See Knisley,* 81 S.W.3d 478 (officer had probable cause to arrest operator of motorcycle based on 1) gouges in the pavement which appeared to have been caused by a motorcycle sliding across the pavement, and 2) the operator of the motorcycle smelled of alcohol and was unable to answer some questions); *see also Reynolds v. State,* 902 S.W.2d 558, 560 (Tex. App.-Houston [1st Dist.] 1995, pet. ref'd) (probable cause to arrest when officer testified defendant had slurred speech, bloodshot eyes, breath that smelled of alcohol, and posed a danger to himself and others).

Further, Washburn was under the age of twenty-one at the time of the accident. It is beyond dispute that Trooper Anderson had probable cause to arrest Washburn for driving under the influence by a minor. A person under the age of twenty-one "commits an offense if the minor operates a motor vehicle in a public place while having any detectable amount of alcohol in the minor's system." Tex. Alco. Bev.Code Ann. § 106.041 (Vernon 2007). Reviewing de novo the finding of probable cause, we conclude Anderson had probable cause to arrest Washburn for driving under the influence by a minor or for DWI.

▮ The next issue is whether Washburn was under arrest at the time of the offense. The State cites *Bell v. State,* 881 S.W.2d 794 (Tex.App.-Houston [14th Dist.] 1994, pet. ref'd), which contains almost identical facts to the case at issue. In *Bell,* the defendant was transported to a hospital following an automobile accident where he ran his car into a ditch. *Id.* at 796. The officer detected the odor of alcohol on the defendant's breath but did not conduct any sobriety tests. *Id.* At the hospital, the officer read the DIC–24 form to the defendant and requested a blood sample. *Id.* Even though the arresting officer testified Bell was not under arrest, the Fourteenth District Court of Appeals concluded there was evidence to support a conclusion the defendant was under arrest when he consented to the taking of a blood specimen. *Id.* at 800.

Other cases with similar facts to this case have likewise concluded the defendant was under arrest. *See, e.g., Nottingham v. State,* 908 S.W.2d 585, 587 (Tex.App.-Austin 1995, no pet.) (defendant under arrest at hospital when she had sustained injuries in an automobile accident, she had failed horizontal gaze nystagmus (HGN) test, officer detected odor of alcohol, and she was read DIC–24 warnings); *State v. Williams,* 814 S.W.2d 256, 259 (Tex.App.-Austin 1991), *aff'd,* 832 S.W.2d 52 (Tex. Crim.App.1992) (defendant under arrest at hospital when he had sustained injuries in one-car accident, his eyes were red and bloodshot, his speech was slurred, he failed HGN test, and he was read DIC–24 warnings).

▮ Trooper Anderson testified that, while he believed he had probable cause to arrest Washburn at the time he requested a specimen, he never arrested Washburn.[4] Washburn argues that it "is apparent that

---

4. The context of Anderson's testimony indicates he believed that a suspect was under arrest only when the suspect was physically restrained in some manner. Anderson denied ever restraining Washburn with handcuffs. A person can be under arrest even when he or she is not physically restrained. *See Woods v. State,* 466 S.W.2d 741, 743 (Tex.Crim.App. 1971).

the trooper used the DIC–24 out of cautiousness, not because he intended to place Appellant under arrest." However, the subjective intent of law enforcement officials is irrelevant unless that intent is somehow communicated or otherwise manifested to the suspect. *Dowthitt,* 931 S.W.2d at 254. The test is whether a reasonable person would believe his or her freedom of movement was restrained to the degree associated with a formal arrest.

Under the circumstances of this case, the manifestation of probable cause by the defendant, combined with other circumstances, would lead a reasonable person to believe that he or she is under restraint to the degree associated with an arrest. When asked what had happened, Washburn responded, "I'm not going to lie to you. I have been drinking," and was obviously aware of the facts giving rise to probable cause, such as the fact that he was the driver of a vehicle which struck a tree. Further, there were other circumstances which would lead a reasonable person to conclude that an arrest had occurred. At the time of the request, Washburn was receiving medical care at the hospital and was informed he was being investigated for a crime. Further, Washburn testified he remembered being read the warnings contained in form DIC–24 and admitted that the first sentence of the warnings states, "You are under arrest for an offense...."

The mere fact that Trooper Anderson read Washburn form DIC–24 is some evidence Washburn was under arrest. In *Bell,* the Fourteenth District Court of Appeals held "the very fact that the form was read to Bell was some evidence that Bell was under arrest." *Bell,* 881 S.W.2d at 799. *But see Combest v. State,* 981 S.W.2d 958, 960 (Tex.App.-Austin 1998, pet. ref'd) (holding that no arrest occurred despite DIC–24 warnings because "[a]ppellant and the State both agree[d] and the record affirm[ed]" that appellant was not under arrest). The Fourteenth District also noted "the mere fact that an officer makes the statement to an accused that he is under arrest is not enough to complete the arrest." *Bell,* 881 S.W.2d at 799 (quoting *Burkhalter v. State,* 642 S.W.2d 231, 233 (Tex.App.-Houston [14th Dist.] 1982, no pet.)). Although the reading of form DIC–24 may not be sufficient by itself to constitute an arrest, it is a significant factor in determining whether a reasonable person would believe he or she was free to leave. We agree with the Austin Court of Appeals that, "[w]hile the officer might have considered the language of the DIC–24 form to be merely a formality, a reasonable person in appellant's position would believe that [he or she] was not free to leave after being told by a police officer that [he or she] was under arrest." *See Nottingham,* 908 S.W.2d at 588. There is no evidence that Anderson informed Washburn he was not under arrest or was free to leave.[5] Under the facts of this case, a reasonable person would believe his or her freedom of movement was restrained to the degree associated with a formal arrest. *See Tex. Dep't of Pub. Safety v. Latimer,* 939 S.W.2d 240, 244 (Tex.App.-Austin 1997, no pet.) (defendant in hospital after being read a form containing the words "[y]ou are under arrest"-a reasonable person would not believe he was free to leave). The manifestation of probable cause by the defendant, combined with the other circumstances at the time of the request, would lead a reasonable per-

---

5. We note Trooper Anderson testified Washburn was "free to leave if he wanted to ... against medical advice." However, there is no evidence Washburn was informed he was free to leave. When asked whether he had "restrained [Washburn's] movement in any way," Anderson responded, "The hospital did that."

son to believe that he or she is under restraint to the degree associated with an arrest. We conclude Washburn was in fact under arrest at the time of the request.

### Washburn's Consent Was Voluntary

Washburn's only argument that his consent was involuntary is that the warnings were incorrect and rendered his otherwise voluntary confession involuntary. Washburn testified he did not freely consent to the specimen because he "was afraid [he] was going to lose [his] license." If he had not been told his driver's license would be suspended, Washburn testified he would have refused to provide a specimen. As discussed above, Washburn was under arrest at the time the request was made. As such, the warnings given by Trooper Anderson were appropriate. Because Washburn was under arrest at the time Anderson requested the specimen, Washburn was not misinformed concerning the consequences of refusal.

 Consent to search is one of the well-established exceptions to the constitutional requirements of both a warrant and probable cause. *Schneckloth v. Bustamonte,* 412 U.S. 218, 219, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973); *Carmouche v. State,* 10 S.W.3d 323, 331 (Tex.Crim.App.2000). "Although the federal constitution only requires the State to prove the voluntariness of consent by a preponderance of the evidence, the Texas Constitution requires the State to show by clear and convincing evidence that the consent was freely given." *Carmouche,* 10 S.W.3d at 331; *see Montanez v. State,* 195 S.W.3d 101, 105 (Tex. Crim.App.2006). To be valid, a consent to search must be positive and unequivocal and must "not be coerced, by explicit or implicit means, by implied threat or covert force." *Id.* Consent is "not established by 'showing no more than acquiescence to a claim of lawful authority.'" *Id.*

 The record contains sufficient evidence that Washburn's consent was voluntary. Anderson testified it was clear Washburn had consented to the blood specimen. Washburn testified he was read the DIC–24 form and admitted giving consent to the taking of a blood specimen. We grant almost total deference to trial courts' determinations when they are based on an evaluation of credibility and are supported by the record. No error has been shown in the trial court's determination that Washburn's consent was freely and voluntarily given. *See Masterson v. State,* 155 S.W.3d 167, 170 (Tex. Crim.App.2005).

For the reasons stated, we overrule Washburn's sole point of error and affirm the trial court's judgment.