ACCEPTED
01-17-00352-CR
FIRST COURT OF APPEALS
HOUSTON, TEXAS
3/19/2018 11:38 PM
CHRISTOPHER PRINE
CLERK

**No. 01-17-00352-CR**

In the Court of Appeals
For the First District of Texas
At Houston

————————◆————————

FILED IN
1st COURT OF APPEALS
HOUSTON, TEXAS

3/19/2018 11:38:14 PM

CHRISTOPHER A. PRINE
Clerk

**No. 1515550**
In the 351st District Court
Of Harris County, Texas

————————◆————————

**Nelson Oroyo Rodriguez**
*Appellant*

*v.*

**The State of Texas**
*Appellee*

————————◆————————

**State's Appellate Brief**

————————◆————————

**Clint Morgan**
Assistant District Attorney
Harris County, Texas
State Bar No. 24071454
morgan_clinton@dao.hctx.net

1310 Prairie, Suite 500
Houston, Texas 77002
Telephone: 713 274 5826

**Kim Ogg**
District Attorney
Harris County, Texas

**Lisa Colins**
**Joseph Allard**
Assistant District Attorneys
Harris County, Texas

Oral Argument Not Requested

**Statement Regarding Oral Argument**

The appellant requested oral argument because he believes it "would serve to emphasize and clarify the important legal points regarding this appeal." (Appellant's Brief at 7).[1] The State believes the legal points of this appeal are straightforward and well-covered by the parties' briefs. Accordingly, the State does not request oral argument.

---

[1] The only page in the appellant's brief that is numbered is the cover. The State will cite to the page numbers of the PDF file of the appellant's brief.

## Identification of the Parties

Counsel for the State:

     Kim Ogg
          — District Attorney of Harris County

     Lisa Collins & Joseph Allard
          — Assistant District Attorneys at trial

     Clint Morgan
          — Assistant District Attorney on appeal

Appellant:

     Nelson Oroyo Rodriguez

Counsel for the Appellant:

     Jonathan Gluckman
          — Counsel at trial

     Tom Abbate
          — Counsel on appeal

Trial Court:

     A. Reagan Clark
          — Presiding judge

# Table of Contents

Statement Regarding Oral Argument ....................................i

Identification of the Parties.............................................ii

Table of Contents ......................................................iii

Index of Authorities ................................................... iv

Statement of the Case ................................................. 1

Statement of Facts ..................................................... 1

Reply to Point One ..................................................... 3

    Police had probable cause to believe the appellant's phone and shoes were evidence of a crime, thus police lawfully seized them under the plain view doctrine.................................................3

Reply to Point Two...................................................... 8

    The trial court's finding that the appellant consented to police taking DNA samples and GSR swabs from his person is supported by the record and is not clearly erroneous. ....................................8

Conclusion .......................................................... 16

Certificate of Compliance and Service ........................... 17

# Index of Authorities

## Cases

*Aguayo v. State*
No. 08-13-00283-CR, 2015 WL 6741873 (Tex. App.—
El Paso Nov. 4, 2015, no pet.)
(mem. op. not designated for publication) ....................................14

*Arrick v. State*
107 S.W.3d 710 (Tex. App.—
Austin 2003, pet. ref'd) ............................................................6, 7

*Derichsweiler v. State*
348 S.W.3d 906 (Tex. Crim. App. 2011) ...................................... 6

*Martinez v. State*
91 S.W.3d 331 (Tex. Crim. App. 2002) ......................................... 5

*Meekins v. State*
340 S.W.3d 454 (Tex. Crim. App. 2011) ....................................... 9

*Schneckloth v. Bustamonte*
412 U.S. 218 (1973) ............................................................ 12, 14

*State v. Betts*
397 S.W.3d 198 (Tex. Crim. App. 2013) ...................................... 6

*State v. Roades*
No. 07-11-0077-CR, 2012 WL 6163107 (Tex. App.—
Amarillo Dec. 11, 2012, no pet.)
(mem. op. not designated for publication) ....................................13

*United States v. Terry*
400 F.3d 575 (8th Cir. 2005) ..................................................... 7

*United States v. Waldrop*
404 F.3d 365 (5th Cir. 2005) ..................................................... 8

*United States v. Wells*
98 F.3d 808 (4th Cir. 1996) ...................................................... 7

*Washburn v. State*
235 S.W.3d 346 (Tex. App.—
Texarkana 2007, no pet.)..........................................................13

*Zarychta v. State*
  44 S.W.3d 155 (Tex. App.—
  Houston [14th Dist.] 2001, pet. ref'd) ........................................... 6

## Statutes

TEX. TRANSP. CODE § 724.015 ......................................................13

## Statement of the Case

The appellant was indicted for capital murder. (1 CR 4). The appellant pleaded not guilty but a jury found him guilty as charged. (4 RR 21; 2 CR 269). Because the State did not seek the death penalty, the trial court assessed punishment at confinement for life without the possibility of parole. (2 CR 272). The appellant filed a notice of appeal and the trial court certified his right of appeal. (2 CR 276, 278).

## Statement of Facts

Osorio Gonzalez and Denelio Duarte sold drugs out of a house they shared with three other people. (5 RR 16-18, 24). The appellant and three others decided to break into the house and steal money and drugs. (5 RR 168-71, 194). When the robbers arrived at the house, no one was home; rather than going in to steal the items non-violently, the robbers waited for people to return to the house because part of their objective was to "get the person that lived at the house." (5 RR 174-75).

Gonzalez, Duarte, and two of their housemates returned home from a club around 3am. (5 RR 25). As they were filing into the house, the robbers emerged from the shadows and forced their way inside. (5 RR 26-28, 182). One robber held Duarte on the ground at gunpoint while Gonzalez ran into a back room to get a gun. (5 RR 183, 187). Gonzalez and the appellant

1

exchanged gun fire with each getting hit; Duarte was also shot. (4 RR 36; 5 RR 38-41, 188). The robbers fled the scene empty-handed, but Gonzlez died from his injuries. (5 RR 195; 7 RR 19).

The robbers dropped the appellant off at a nearby emergency room. (4 RR 201-04; 5 RR 191). Once he was stabilized, the appellant was transported to the same hospital where Duarte was being treated and where Gonzalez's body was being held. (5 RR 240-41).

Harris County Sheriff's Deputy Eric Frederick was dispatched to the hospital to interview the appellant, who had reported he was the victim of an aggravated robbery. (4 RR 77-78). The appellant said he got shot when two black males robbed him of his phone and wallet outside a club. (4 RR 80). Deputy Frederick doubted this story because he saw the appellant talking on his cell phone, and because the appellant produced his identification from his wallet. (4 RR 83). Police quickly connected the appellant to the home invasion; ultimately, DNA tests would match the appellant to several blood stains at the scene, the appellant's cell phone showed he was at the scene at the time of the robbery, and one of the other robbers testified against the appellant at trial. (4 RR 86; 5 RR 164-195; 6 RR 151-60, 211-13).

**Police had probable cause to believe the appellant's phone and shoes were evidence of a crime, thus police lawfully seized them under the plain view doctrine.**

At trial, the appellant raised an objection to the police seizure of his phone and shoes while he was at the hospital. The appellant complained that the warrantless seizure was unlawful. After a mid-trial hearing outside the presence of the jury, the trial court overruled the objection. (*See* 4 RR 140-164, 211-12). In his first point of error, the appellant complains that the trial court's ruling was erroneous. (Appellant's Brief at 12-29).

The only witness at the hearing was Daniel DellaSala, the crime scene investigator for the Harris County Sheriff's Office who collected the appellant's belongings from the hospital. DellaSala testified that he and another crime scene investigator, Billy Davis, were dispatched to the hospital where the appellant and the two victims had been taken. (4 RR 142). At the hearing, DellaSala testified that he took from the appellant's hospital room "[s]ome various clothing items … a wallet, as well as a cellphone…."[2] (4 RR 145). DellaSala testified he took these items to preserve them for evidence. (4 RR 145). He described numerous ways in which cell phones can provide

---

[2] After the hearing, he gave a more detailed description of what he took, specifically mentioning, *inter alia*, "a pair of tennis shoes." (4 RR 178).

evidence of criminal offenses, as well as describing ways that data can be deleted or altered on cell phones. (4 RR 145-47). However, DellaSala testified that investigators typically get warrants before searching the data inside a cell phone; indeed, though DellaSala seized the phone without a warrant, no search of the phone's contents was made in this case until a warrant was obtained. (4 RR 158).

After DellaSala's testimony, the parties presented arguments. The appellant conceded that DellaSala had probable cause to seize the phone, but claimed that he needed a warrant to do so.[3] (*See* 4 RR 156). The State argued that the seizure was appropriate due to exigent circumstances. (4 RR 162, 164). After discussing the case with the parties, the trial court denied the motion. (4 RR 164).

In his brief, the appellant's entire point revolves around DellaSala's testimony and the arguments at the hearing. However, a trial court's ruling on the admissibility of evidence is reviewed for an abuse of discretion and an appellate court must affirm the decision if it was correct under any theory of law applicable to the case, regardless of the arguments presented to the court

---

[3] Later, defense counsel explained to the trial court that he believed his objection covered all of the items DellaSala seized, including his shoes. (4 RR 211-12). At that time, which was before evidence from the shoes was admitted, the appellant "renewed" his objection as regarded the seizure of his shoes and the trial court overruled the objection. (4 RR 212). The State will assume, without conceding, that the appellant preserved his complaint regarding his shoes.

4

or the stated basis of the trial court's ruling. *See Martinez v. State*, 91 S.W.3d 331, 336 (Tex. Crim. App. 2002).

Prior to the hearing, the State had presented the testimony of Deputy Eric Fredrick. Fredrick had been dispatched to investigate the appellant's report that he had been shot during a robbery. (4 RR 78). The appellant told Fredrick that "two unknown black males" had jumped him outside the Mekano Club off Richmond Ave. in Houston. (4 RR 80-81, 84). The appellant told Frederick that the "two unknown black males" had taken his wallet and his cell phone. (4 RR 83).

However, Fredrick called dispatch and was told that there had been no reports of shots fired near the Mekano Club. (4 RR 82). Fredrick also observed the appellant talking on a cell phone, and the appellant produced identification from his wallet, leading Fredrick to suspect that the robbery story was not the truth. (4 RR 83). Fredrick was also aware that there had been a shootout at a home invasion robbery very near the hospital, which, combined with the appellant's fake cover story, led Fredrick to believe the appellant might be connected to that robbery. (4 RR 84-85). After speaking with the appellant, Fredrick contacted his supervisors and relayed his suspicions about the appellant's "conflicting story." (4 RR 87). The supervisor dispatched DellaSala and Davis to the hospital. (4 RR 87).

When police officers are lawfully in a location and see an item whose nature as contraband or evidence is immediately apparent, police may seize the item under the plain view exception to the warrant requirement. *State v. Betts*, 397 S.W.3d 198, 206 (Tex. Crim. App. 2013); *Arrick v. State*, 107 S.W.3d 710, 719 (Tex. App.—Austin 2003, pet. ref'd). The test for whether the incriminating nature of the item is "immediately apparent" is whether, without conducting any additional searches, police have probable cause to believe the item is contraband or evidence. *Zarychta v. State*, 44 S.W.3d 155, 166–67 (Tex. App.—Houston [14th Dist.] 2001, pet. ref'd). Whether probable cause exists in a particular case is not determined by looking at the knowledge of a particular officer, but by looking at the combined knowledge of all cooperating police officers. *See Derichsweiler v. State*, 348 S.W.3d 906, 912 (Tex. Crim. App. 2011) (when determining whether police had reasonable suspicion for warrantless detention, reviewing court looks at collective knowledge of all cooperating police); *Woodward v. State*, 668 S.W.2d 337, 344 (Tex. Crim. App. 1982) (op. on reh'g) (when determining whether police had probable cause for warrantless arrest, reviewing court looks at collective knowledge of police).

In this case, Fredrick had probable cause to suspect that the appellant's phone and clothing might contain evidence of several crimes —

the uncorroborated aggravated robbery that the appellant reported being the victim of; the false report to a police officer that Frederick suspected the appellant of; and the deadly home invasion that seemed to fit the facts of the situation. By providing evidence of the appellant's locations and communications, the cell phone could prove or disprove any of these offenses. The appellant's clothing likewise would probably contain residual forensic evidence that would constitute evidence of these offenses. *See Arrick*, 107 S.W.3d at 719 (belief that killer wore footwear at time of offense provided probable cause to seize footwear).

Because DellaSala was collecting evidence based on the report submitted by Fredrick — indeed, while Fredrick was still at the hospital — the collective knowledge doctrine imputes to DellaSala Frederick's knowledge relating to probable cause. *See United States v. Wells*, 98 F.3d 808, 810 (4th Cir. 1996) (where officer who conducted warrantless seizure of firearm from defendant did not personally have knowledge that defendant was felon but other officers in investigation were aware of that fact, collective knowledge and plain view doctrines justified seizure); *United States v. Terry*, 400 F.3d 575, 581 (8th Cir. 2005) ("We impute information [supporting probable cause] if there has been 'some degree of communication' between the officers. This requirement distinguishes officers functioning as a team

from officers acting as independent actors who merely happen to be investigating the same subject."); *United States v. Waldrop*, 404 F.3d 365, 370 (5th Cir. 2005) (applying collective knowledge and plain view doctrines to justify warrantless seizure); (*see also* 4 RR 156 (defense counsel conceding to trial court that police had probable cause to seize the phone and belongings)). Because DellaSala had probable cause to believe the cell phone and shoes constituted evidence of an offense, and because these items were in plain view, DellaSala was justified in seizing them and the trial court did not err in overruling the appellant's objection.

**Reply to Point Two**

**The trial court's finding that the appellant consented to police taking DNA samples and GSR swabs from his person is supported by the record and is not clearly erroneous.**

While the appellant was in the hospital, he consented to police taking a buccal swab sample of his DNA, and swabbing his hands for gun-shot residue. Prior to trial the appellant filed a motion to suppress the resulting evidence, claiming that his consent was not effective. (2 CR 189). After a pre-trial hearing the trial court denied this motion. (2 RR 119). In his second point of error the appellant claims that the trial court's ruling was erroneous. (Appellant's Brief at 30-45).

8

Although the Fourth Amendment generally requires a warrant before police may conduct a search, one of the recognized exceptions to that requirement is if the subject of the search voluntarily consents. *Meekins v. State*, 340 S.W.3d 454, 458 (Tex. Crim. App. 2011). Whether a particular subject's consent was voluntary is a fact question that, if challenged, a trial court will determine based on the totality of the circumstances. *Id.* at 459-60. The burden of proof in the trial court is whether voluntariness is proven by clear and convincing evidence. *Ibid.* On appeal, a trial court's finding of volunatriness must be afforded great deference and will be disturbed only if it is "clearly erroneous." *Id.* at 460. The Court of Criminal Appeals laid out the appropriate question for appellate courts reviewing a trial court's determination of voluntariness: "Could a rational trier of fact conclude, by clear and convincing evidence (less than beyond a reasonable doubt), based upon all of the facts and logical inferences that can be drawn from those facts, that [the subject] voluntarily consented to the search?" *Id.* at 459 n. 24.

The State presented three witnesses at the hearing. The first was Cassandra Kendrick, an emergency-room nurse who helped treat the appellant. (2 RR 8). Kendrick said that she was able to communicate with the appellant in English. (2 RR 15-16). She characterized the appellant as

"alert and awake." (2 RR 20). She remembered going over with the appellant consent for an operation; she believed the appellant was capable of consent at the time, and he initialed and signed the relevant paperwork as needed. (2 RR 24-25). She said the hospital had procedures for patients who were incapacitated and could not consent to surgery, but those procedures were not implemented in this case. (2 RR 26).

The next witness was Deputy Billy Davis, a crime scene investigator with the Harris County Sheriff's Department. (2 RR 43-44). Davis said that he was under the impression that the appellant could not speak Spanish, so he made use of a Spanish-speaking deputy to serve as a translator. (2 RR 48-49). Davis said that he explained to the appellant that he wanted to do both a gun-shot residue (GSR) collection and a DNA collection. (2 RR 50). Davis said that the appellant was able to communicate, and that everyone spoke in a normal tone of voice. (2 RR 51). Davis said that he had the translator advise the appellant he could refuse consent. (2 RR 52). Davis said the appellant was polite and cooperative. (2 RR 52-53). Davis said he neither threatened the appellant nor demanded that he sign the consent form. (2 RR 56). Davis said that he never saw the appellant become incoherent. (2 RR 58)-59). Davis said that the appellant appeared to be in pain, but he never drifted out of consciousness. (5 RR 71).

Deputy Jorge Reyes testified that he served as a translator for Davis. (2 RR 76-77). Reyes said that he spoke with the appellant in a "regular" tone and never raised his voice. (2 RR 77). Reyes said that as he translated what Davis said, he made it clear that it was the appellant's choice whether to consent. (2 RR 79). Reyes said that the appellant never drifted out of consciousness while he was speaking with him. (2 RR 81). Reyes said that the appellant never said he did not wish to speak with police, but remained cooperative the whole time. (2 RR 81). Reyes said that he walked the appellant through a Spanish-language consent form, and the appellant signed it. (2 RR 82-84; State's Ex. 2 (8A RR 239)).

After these witnesses, the appellant testified. He claimed he did not remember anything that the officers testified about and did not remember signing the consent form. (2 RR 105).

The parties then presented arguments. Defense counsel argued that the appellant may have been on morphine at the time.[4] (2 RR 109). Defense counsel argued that police could have obtained a warrant. (2 RR 110-11). Defense counsel argued that the appellant was not free to leave at the time, and the deputies should have *Mirandized* the appellant. (2 RR 112-13).

---

[4] As defense counsel later admitted, the record on this point was not clear. (2 RR 113-14).

The prosecutor responded by pointing out that the fact that officers could have obtained a warrant did not mean consent was insufficient. (2 RR 116). The prosecutor pointed out that case law focuses on the behavior and demeanor of the officers seeking consent, and the evidence showed that the officers here spoke calmly and did not threaten the appellant. (2 RR 116-17). The prosecutor further pointed out that at the time the officers interacted with him the appellant had reported being the victim of a crime, thus there seemed little reason for them to intimidate him. (2 RR 117). The prosecutor disputed defense counsel's claim that the appellant was on morphine, but then noted that drug use "does not bar the ability to give consent, as long as they showing that they are able to understand what is being asked of them and able to give that consent." (2 RR 117-18). The prosecutor reiterated the deputies' testimony that the appellant seemed alert and interactive. (2RR 118). The trial court found that the appellant's consent to the search was voluntary. (2 RR 119).

On appeal, the appellant claims that his consent was involuntary because his will was overborne. (Appellant's Brief at 38 (citing *Schneckloth v. Bustamonte*, 412 U.S. 218, 226 (1973))). In *Schneckloth*, the Supreme Court reviewed cases where it had been asked to determine whether a statement was given voluntarily. The court listed several factors it had considered in

those cases: The "youth" of the accused, his lack of education, his low intelligence, the lack of any advice regarding constitutional rights, the length of detention, the repeated and prolonged nature of the questioning, and the use of physical punishment such as the deprivation of food or sleep. 412 U.S at 226. The court emphasized that none of these factors standing alone was determinative. *Id.* at 226-27.

The appellant adduced no evidence that he was particularly young,[5] ill-educated, or of low intelligence. The appellant admits that the deputies' questioning was not repetitive, and that the length of detention (if any) was not overly long. (Appellant's Brief at 39).

The appellant claims that because he was not *Mirandized* or read "any warnings or admonishment like those contained in the DIC-23[6] [*sic*] forms" that is a factor that weighs in his favor. (Appellant's Brief at 39). However, both deputies testified that they told the appellant he was free to refuse

---

[5] Medical records show that the appellant was 30 years old at the time. (8A RR 16).

[6] The DIC-24 is a statutory warning read to DWI suspects in Texas that advises them of the administrative consequences of refusing to provide a requested blood or breath specimen. *See, e.g. Washburn v. State*, 235 S.W.3d 346, 351 (Tex. App.—Texarkana 2007, no pet.); TEX. TRANSP. CODE § 724.015. The relevance of the DIC-24 here is not obvious. If a defendant voluntarily consents to give a breath or blood sample, an officer's failure to read a DWI suspect the DIC-24 is of no legal significance. *State v. Roades*, No. 07-11-0077-CR, 2012 WL 6163107, at ⋆3 (Tex. App.—Amarillo Dec. 11, 2012, no pet.) (mem. op. not designated for publication). Moreover, the appellant would not have faced any legal consequences had he refused consent to search, thus there was nothing equivalent to the DIC-24 that could have been read to him.

consent. (2 RR 52, 79). When viewed with appropriate deference to the trial court's findings, this factor weighs in favor of the State.

The appellant's only remaining argument is that "the psychological impact of being questioned immediately prior to having a bullet surgically removed from one's person weighs in his favor and overrides many, if not all other concerns." (Appellant's Brief at 40). The appellant does not cite to any authority for this proposition and the State is aware of none. All cases involving questions of consent are determined by the totality of the circumstances, not any particular factor. *Schneckloth*, 412 U.S. at 226-27. If the appellant was in pain, that is certainly that something that can factor into the analysis, but in this case the trial court had before it the testimony from two officers and a nurse that the appellant seemed lucid, alert, and cooperative at the relevant time period. Given that testimony, the State submits that the appellant's assertions of pain are not sufficient to show that the trial court's finding of voluntariness was clearly erroneous. *See Rayford v. State*, 125 S.W.3d 521, 529 (Tex. Crim. App. 2003) (holding consent to search was voluntary despite defendant undergoing medical procedures and complaining of pain); *Aguayo v. State*, No. 08-13-00283-CR, 2015 WL 6741873, at *2, *4 (Tex. App.—El Paso Nov. 4, 2015, no pet.) (mem. op. not designated for publication) (same). Accordingly, the trial court did not

14

err in overruling the appellant's objection and this Court should reject his second point.

## Conclusion

The State asks this Court to affirm the judgment of the trial court.

**KIM OGG**
District Attorney
Harris County, Texas


/s/ C.A. Morgan
**CLINT MORGAN**
Assistant District Attorney
Harris County, Texas
1310 Prairie, Suite 500
Houston, Texas  77002
Telephone: 713 274 5826
Texas Bar No. 24071454

## Certificate of Compliance and Service

I certify that, according to Microsoft Word, the portion of this brief for which Rule of Appellate Procedure 9.4(i)(1) requires a word count contains 3,303 words.

I also certify that I have requested that efile.txcourts.gov electronically serve a copy of this brief to:

Tom Abbate
tom@tomabbatelaw.com

/s/ C.A. Morgan
**CLINT MORGAN**
Assistant District Attorney
Harris County, Texas
1310 Prairie, Suite 500
Houston, Texas 77002
Telephone: 713 274 5826
Texas Bar No. 24071454

Date: March 19, 2018