# NO. 12-18-00315-CR

# IN THE COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT

# TYLER, TEXAS

| | | |
|---|---|---|
| *FRED MICHAEL CLARK,*<br>*APPELLANT* | § | *APPEAL FROM THE* |
| *V.* | § | *COUNTY COURT AT LAW* |
| *THE STATE OF TEXAS,*<br>*APPELLEE* | § | *CHEROKEE COUNTY, TEXAS* |

## *MEMORANDUM OPINION*

Fred Michael Clark appeals his conviction for driving while intoxicated. In one issue, he argues the trial court abused its discretion when it denied his motion to suppress his blood test results. We affirm.

## BACKGROUND

Appellant was charged with driving while intoxicated alleged to have occurred on August 6, 2016. Prior to trial, he moved to suppress the State's blood alcohol test results. At a hearing on the motion to suppress, the State called one witness, Stephen Gresham, a trooper with the Department of Public Safety (DPS).

Gresham testified that he has been employed by DPS since 2003, and attended the DPS academy in Austin. Gresham testified that he is trained in the detection of impaired driving and is a certified standardized field sobriety test (SFST) practitioner and instructor, as well as a drug recognition expert and instructor.

On August 6, the Cherokee County Sheriff's office asked him to investigate a one vehicle crash that occurred south of Rusk, Texas. Dispatch informed Gresham that the driver of the vehicle was at a hospital in Jacksonville, Texas. Gresham went to the hospital and met with Appellant, who admitted to Gresham that he was the driver of the vehicle involved in the crash. Gresham

observed Appellant to be in a hospital bed with a cervical collar around his neck. Gresham testified that upon entering Appellant's hospital room, he immediately smelled alcohol. When Gresham spoke with Appellant, he realized that the odor of alcohol was emitting from Appellant's breath. Gresham observed that Appellant had bloodshot, glassy eyes, which indicated to Gresham that Appellant was intoxicated.

Appellant told Gresham that he left his sister's house in Palestine, Texas and lost control of the vehicle while navigating a curve on a rural road south of Rusk. Appellant admitted to Gresham that he had a couple of beers at his sister's house. Appellant called his wife to pick him up from the crash scene and take him to the hospital. Gresham asked Appellant why he did not call emergency services after the crash, and he told Gresham it was because he did not have cell service. When Gresham asked Appellant how he was able to call his wife without cell service, Appellant was unable to give an explanation.

Gresham checked Appellant's eyes for equal pupil size, equal tracking, and resting nystagmus to rule out a head injury prior to administering the horizontal gaze nystagmus (HGN) test on Appellant. When Gresham administered the HGN test on Appellant, he observed six of six clues, indicating that Appellant's blood alcohol concentration likely exceeded 0.08. Gresham elected not to administer any other SFSTs due to Appellant's injuries. Gresham determined that he had probable cause to believe Appellant committed the offense of driving while intoxicated, and informed Appellant that he was requesting a blood sample to test his alcohol concentration. Gresham provided Appellant with a copy of the DIC-24, entitled "statutory warning," which must be given to an individual placed under arrest for driving while intoxicated. The DIC-24 states, in pertinent part, that the individual receiving the form is under arrest and the officer providing the form is requesting a blood or breath specimen. The DIC-24 also warns the individual of the consequences of refusing to provide a specimen, which includes the suspension or denial of the individual's driver's license. Gresham read the contents of the form aloud to Appellant, including the line that states "you are under arrest." Gresham testified that he considered Appellant to be under arrest at the time he requested Appellant's blood, but did not transport Appellant to jail immediately because Appellant was injured and needed to remain in the hospital. Gresham testified to telling Appellant that he would not transport Appellant to jail immediately due to his injuries, but would have an arrest warrant issued upon his release. Appellant consented to giving a blood sample. The sample was obtained by hospital staff and submitted for testing by Gresham.

The laboratory testing indicated Appellant's blood alcohol concentration was 0.18. Appellant moved to suppress the results of the blood test, which the trial court denied. Thereafter, Appellant entered a plea of "guilty" to driving while intoxicated, and was sentenced to eighteen months of community supervision. This appeal followed.

## MOTION TO SUPPRESS

In his sole issue, Appellant argues that the trial court erred in denying his motion to suppress.

### Standard of Review and Applicable Law

In reviewing a motion to suppress, we apply a bifurcated standard of review. *Hubert v. State*, 312 S.W.3d 554, 559–60 (Tex. Crim. App. 2010). We give almost total deference to the trial court's rulings on (1) questions of historical fact, even if the trial court's determination of those facts was not based on an evaluation of credibility and demeanor; and (2) application-of-law-to-fact questions that turn on an evaluation of credibility and demeanor. *See Amador v. State*, 221 S.W.3d 666, 673 (Tex. Crim. App. 2007). But when application-of-law-to-fact questions do not turn on the credibility and demeanor of the witnesses, we review the trial court's rulings on those questions de novo. *See id.*

We must view the evidence in the light most favorable to the trial court's ruling. *State v. Kelly*, 204 S.W.3d 808, 818 (Tex. Crim. App. 2006). The trial judge is the exclusive fact-finder and the judge of the credibility of the witnesses and the weight to be given their testimony at the suppression hearing. *State v. Ross*, 32 S.W.3d 853, 855 (Tex. Crim. App. 2000). When the trial court does not make express findings of fact, an appellate court must "presume that the trial court implicitly resolved all issues of historical fact and witness credibility in the light most favorable to its ultimate ruling." *State v. Elias*, 339 S.W.3d 667, 674 (Tex. Crim. App. 2011). An appellate court will sustain the trial court's decision if it concludes that the decision is correct on any theory of law applicable to the case. *Ross*, 32 S.W.3d at 855–56.

Any person arrested for DWI is deemed to have given consent to providing a specimen for a breath or blood test for the purpose of determining the person's alcohol concentration or the presence of other intoxicants. *See* TEX. TRANSP. CODE ANN. § 724.011(a) (West 2011). However, a person retains an absolute right (subject to certain exceptions inapplicable here) to refuse a test. *Id.* § 724.013 (West 2011); *Fienen v. State*, 390 S.W.3d 328, 333 (Tex. Crim. App. 2012). The

3

court of criminal appeals has reconciled these provisions to mean that a driver may not legally refuse to provide a blood or breath specimen, but can physically refuse to submit, and the law recognizes that practicality forbids the use of physical force to compel submission. *Fienen*, 390 S.W.3d at 333. Further, a driver's consent to a blood or breath test must be free and voluntary, and it must not be a result of physical or psychological pressures applied by law enforcement. *Id.* In determining if consent is voluntary, the ultimate question is whether the person's will has been overborne and his capacity for self determination critically impaired such that his consent to search must have been involuntary. *Id.* (citing *Schneckloth v. Bustamonte*, 412 U.S. 218, 225–26, 93 S. Ct. 2041, 2047, 36 L. Ed. 2d 854 (1973); *Meekins v. State*, 340 S.W.3d 454, 459 (Tex. Crim. App. 2011)).

**Analysis**

In this case, Appellant argues he was not under arrest at the time Gresham requested a blood sample and thus, Section 724.011(a) is not applicable. For this reason, he further argues that Gresham misrepresented the consequences of a refusal, rendering Appellant's consent involuntary under the Fourth Amendment. *See* U.S. Const. Amend. IV.

Article 15.22 of the code of criminal procedure states that "a person is arrested when he has been actually placed under restraint or taken into custody by an officer or person executing a warrant of arrest, or by an officer or person arresting without a warrant." Tex. Code Crim. Proc. Ann. art. 15.22 (West 2005). Appellant argues that he was not arrested because Gresham did not handcuff him, transport and book him into jail, or have him guarded by an officer while in the hospital. Further, he states that the "officer simply pronounced that the Appellant was under a 'noncustodial arrest'; the officer obtained the blood sample and left the hospital premises simply allowing the Appellant to at some later point be arrested."

Our courts have determined that a person is in "custody" only if, under the circumstances, a reasonable person would believe that his freedom of movement was restrained to the degree associated with a formal arrest. *Dowthitt v. State*, 931 S.W.2d 244, 254 (Tex. Crim. App. 1996). At least four general situations may constitute custody: (1) the suspect is physically deprived of his or her freedom of action in any significant way, (2) a law enforcement officer tells the suspect that he or she cannot leave, (3) law enforcement officers create a situation that would lead a reasonable person to believe that his or her freedom of movement has been significantly restricted,

4

and (4) there is probable cause to arrest and law enforcement officers do not tell the suspect that he or she is free to leave. *Id*. at 255. The fourth situation has been further explained as follows:

> …the officers' knowledge of probable cause be manifested to the suspect. Such manifestation could occur if information substantiating probable cause is related by the officers to the suspect or by the suspect to the officers. Moreover, given our emphasis on probable cause as a "factor" in other cases, situation four does not automatically establish custody; rather, custody is established if the manifestation of probable cause, combined with other circumstances, would lead a reasonable person to believe that he is under restraint to the degree associated with an arrest.

*Id.* Thus, in determining if Appellant was under arrest when he consented to providing a blood sample, we must first determine if probable cause existed for his arrest. Probable cause for a warrantless arrest exists if, at the moment the arrest is made, the facts and circumstances within the arresting officer's knowledge and of which he has reasonably trustworthy information are sufficient to warrant a reasonable person in believing that the person arrested had committed or was committing an offense. *Beck v. Ohio*, 379 U.S. 89, 91, 85 S. Ct. 223, 225 13 L. Ed. 2d 142 (1964). The test for probable cause is objective, unrelated to the subjective belief of the arresting officer, and requires a consideration of the totality of the circumstances known to the officer at the time of arrest. *Amador*, 275 S.W.3d at 878 (citing *Beck*, 379 U.S. at 97, 85 S. Ct. at 228-29); *Maryland v. Pringle*, 540 U.S. 366, 371, 124 S. Ct. 795, 800 157 L. Ed. 2d 769 (2003). A probable cause finding requires "more than bare suspicion" but "less than…would justify…conviction." *Brinegar v. United States*, 338 U.S. 160, 175, 69 S. Ct. 1302, 1310-11, 93 L. Ed. 1879 (1949).

During the early morning hours, Appellant lost control of his vehicle while navigating a curve, crashed, and called his wife instead of emergency services to transport him to the hospital. Appellant told Gresham that he called his wife instead of 911 because he had no cell phone service. However, when Gresham questioned how he was able to call his wife without service, Appellant could provide no explanation. Gresham, a trooper trained in detecting intoxicated drivers and performing SFSTs, smelled alcohol on Appellant, and noted that he had bloodshot, watery eyes, consistent with alcohol intoxication. Moreover, Appellant admitted to driving the vehicle, and drinking alcohol prior to the crash. Appellant exhibited six out of six clues on the HGN test, indicating to Gresham that he had an alcohol concentration exceeding 0.08. These facts established probable cause for Gresham to arrest Appellant. *See Washburn v. State*, 235 S.W.3d 346, 351 (Tex. App.—Texarkana 2007, no pet.); *Knisely v. State*, 81 S.W.3d 478, 483-84 (Tex. App.— Dallas 2002, pet ref'd); *Reynolds v. State*, 902 S.W.2d 558, 560 (Tex. App.—Houston [1st Dist.]

1995, pet. ref'd); *Garcia v. State*, No. 10-13-00166-CR, 2014 WL 3724130 at *4-5 (Tex. App.—Waco July 24, 2014, no pet.) (mem. op., not designated for publication).

With respect to whether Appellant felt free to leave, in factually similar scenarios, i.e., an injured DWI suspect at a hospital, courts have routinely held that the officer's reading the DIC-24 form's "you are under arrest" statement resulted in the suspect being under arrest at the point the statement was made to the suspect. *See Washburn*, 235 S.W.3d at 352-53; *Nottingham v. State*, 908 S.W.2d 585, 588 (Tex. App.—Austin 1995, no pet.). In this case, Appellant crashed his vehicle and called his wife to take him to the hospital. While he lay in a hospital bed, Gresham questioned him regarding the accident and his alcohol consumption. Appellant admitted driving the vehicle, and drinking beforehand. Gresham administered the HGN test, then read Appellant the DIC-24, telling Appellant that he was under arrest for DWI. Although Gresham told Appellant he would not be taken to jail immediately because he was in need of medical attention, Gresham also told Appellant that a warrant would be issued for his arrest after he was released from the hospital. We conclude that a reasonable person, under the totality of these circumstances, would believe that his freedom of movement was restrained to the degree associated with a formal arrest. *See Washburn*, 235 S.W.3d at 352-53; *Nottingham*, 908 S.W.2d at 588; *Garcia*, 2014 WL 3724130 at *4.

Under the circumstances of this case, we hold that the trial court did not err in finding that Appellant was under arrest at the time he consented to providing a blood sample. *See Dowthitt*, 931 S.W.2d at 255. Because Appellant's issue that his consent was involuntary is entirely premised on his argument that he was not under arrest when he gave the consent, and because we have held that the trial court could have reasonably concluded that Appellant was under arrest, we overrule his sole issue.

## CONCLUSION

Having overruled Appellant's sole issue, we *affirm* the trial court's judgment.

**GREG NEELEY**
Justice

Opinion delivered June 5, 2019.
*Panel consisted of Worthen, C.J., Hoyle, J., and Neeley, J.*

(DO NOT PUBLISH)



# COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT OF TEXAS

# JUDGMENT

**JUNE 5, 2019**

**NO. 12-18-00315-CR**

**FRED MICHAEL CLARK,**
Appellant
V.
**THE STATE OF TEXAS,**
Appellee

Appeal from the County Court at Law

of Cherokee County, Texas (Tr.Ct.No. 57976)

THIS CAUSE came to be heard on the appellate record and briefs filed herein, and the same being considered, it is the opinion of this court that there was no error in the judgment.

It is therefore ORDERED, ADJUDGED and DECREED that the judgment of the court below **be in all things affirmed**, and that this decision be certified to the court below for observance.

Greg Neeley, Justice.
*Panel consisted of Worthen, C.J., Hoyle, J., and Neeley, J.*